STATE of Iowa, Appellee,

v.

Terry Lee HARLAN, Appellant.

No. 64061.

Supreme Court of Iowa.

Feb. 18, 1981.

Philip F. DeMoss, Sheffield, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and G. A. Cady, III, County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McGIVERIN, LARSON and SCHULTZ, JJ.

McGIVERIN, Justice.

The question here is whether a "seizure" implicating the fourth amendment occurred prior to the time a police officer observed indicia of defendant's intoxication that led to his arrest for operating a motor vehicle while under the influence of an alcoholic beverage (OMVUI). Defendant Terry Lee Harlan contends he was the victim of an unconstitutional investigatory stop and therefore evidence of his intoxication, including a breath test, should have been suppressed. We affirm because we conclude that no "seizure" occurred before the officer observed defendant's condition. After the officer observed defendant, it was reasonable to investigate further and arrest the defendant.

█ Our review of the record bearing on this search and seizure issue is de novo. *State v. Holtz*, 300 N.W.2d 888, 891 (Iowa 1981). The police officer, Michael Hinton, gave most of the testimony at the suppression hearing and trial. Defendant did not testify at either proceeding. At 3:30 a. m. on November 3, 1978, defendant's car was parked outside a house in Hampton. He had apparently just let out a passenger. As the police officer's car met the defendant's car, Harlan pulled out and headed in the opposite direction. The officer turned his car around and followed Harlan. The officer testified that he was trying to get the license plate number of Harlan's car. Officer Hinton was not chasing Harlan, but he testified that it seemed like Harlan was trying to evade him. Harlan would travel one or two blocks and then turn. Officer Hinton testified that he started out half a block behind Harlan and was a block behind Harlan when he stopped.

Before Harlan stopped, officer Hinton did not observe Harlan violate any laws. The area was not a high crime area. There had been no reports of criminal activity in the

neighborhood. The officer did not suspect Harlan of committing any specific crime.

After following a circuitous route through Hampton, Harlan returned to the house where officer Hinton had first observed him. He was apparently picking up a passenger and therefore stayed in his car with the engine running.

After driving a block to catch up to Harlan, officer Hinton stopped behind Harlan and walked up to defendant's car. He shined a flashlight into the car and observed Harlan, who had bloodshot, watery eyes, behind the steering wheel. Hinton also testified that he smelled alcohol from Harlan. These observations occurred while Harlan's passenger was entering the car. Officer Hinton then requested Harlan's driver's license, asked him to perform field sobriety tests and arrested him.

Harlan was charged with OMVUI, first offense, in violation of section 321.281, Code Supp. 1977. He filed a motion to suppress all evidence relating to his intoxicated condition, the field sobriety tests, and the breath test because they were the result of an unconstitutional investigatory stop. U.S.Const. amend. IV; *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Harlan also claimed the officer had no probable cause to arrest him.

The State argued at the suppression hearing that officer Hinton's approach to the car was not an investigatory stop and, even if it were, the officer had specific and articulable facts to make the stop constitutional.

■ The trial court overruled the motion to suppress. The court concluded that officer Hinton had "an articulable and reasonable suspicion" that Harlan was violating the law because he was driving a car with an out-of-county license at 3:30 a. m. in a manner which evidenced an effort to evade the officer. The court did not expressly determine when a seizure occurred. The State introduced the challenged evidence at trial and the jury found Harlan guilty. The adverse ruling at the suppression hearing preserved any alleged error for our review. *State v. Hilpipre*, 242 N.W.2d 306, 309 (Iowa 1976).

Harlan asserts on appeal that the court erred in overruling his motion to suppress. The State contends that no "seizure" implicating the fourth amendment occurred until after the officer observed Harlan's intoxicated condition and then asked for his driver's license. At that point, the seizure was justified based on officer Hinton's observations of Harlan. We agree with the State's argument.

The fourth amendment states that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ...." It is applicable to the states through the fourteenth amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Osborne*, 200 N.W.2d 798, 804 (Iowa 1972).

■ The fourth amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person. *United States v. Mendenhall*, 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 507 (1980) (two justices); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968). Once there is a seizure, it must be founded on an objective justification.

■ In determining when Harlan was seized, it is important to remember that "not all personal intercourse between policemen and citizens involves 'seizures' of persons" that implicate the fourth amendment. *Terry*, 392 U.S. at 19 n.16, 88 S.Ct. at 1879 n.16, 20 L.Ed.2d at 905 n.16. A seizure occurs "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.; United States v. Bowles*, 625 F.2d 526, 532 (5th Cir. 1980).

Although each case must be decided on its facts, there are some guidelines as to when a person's liberty has been restrained by "physical force or show of authority." If an officer takes hold of a suspect, a seizure has occurred. *Terry*, 392 U.S. at 19, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. A seizure might occur if there was "the

threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance might be compelled." *Mendenhall*, 446 U.S. at 553, 100 S.Ct. at 1877, 64 L.Ed.2d at 509 (two justices). The use of sirens, flashing lights or other signals to pull a moving vehicle to the side of the road might also constitute a show of authority that is a seizure. *Prouse*, 440 U.S. at 657, 99 S.Ct. at 1398, 59 L.Ed.2d at 670. One commentator suggests that a seizure occurs "if the officer engaged in conduct which a reasonable man would view as threatening or offensive even if coming from another private person." 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.2 (1978).

■ Applying these principles to Harlan's case, we conclude that officer Hinton's initial observation of Harlan after Hinton walked up to the car was not a seizure. There was no evidence that officer Hinton stopped the car. He was at least a block behind Harlan when Harlan pulled over. Harlan stopped to pick up a passenger and not because Hinton signaled him over. Hinton did not turn on his red or yellow flashers but rather exited his car and walked up to Harlan's car. Prior to observing defendant's intoxicated state, there is no indication that Hinton spoke or gestured to Harlan. *Cf. United States v. Palmer*, 603 F.2d 1286, 1289 (8th Cir. 1979) (officer motioning and calling to defendant constituted seizure). The officer, like any other citizen, had a right to look into the car. *Holtz*, 300 N.W.2d at 892. *See Illinois v. Holdman*, 73 Ill.2d 213, 220, 383 N.E.2d 155, 158 (1978), *cert. denied*, 440 U.S. 938, 99 S.Ct. 1285, 59 L.Ed.2d 496 (1979) (alternative holding that shining light into defendant's car not a stop). Hinton stood at the side of the car and did not restrain its movement. Officer Hinton's initial observation of Harlan was an innocuous police-citizen encounter that did not implicate the fourth amendment.

■ Unlike the trial court, we need not decide whether this initial observation of Harlan was reasonable because it did not implicate the fourth amendment. We will uphold the conclusion of a trial court, even if we do not adopt its reasoning. *State v. McCowen*, 297 N.W.2d 226, 227 (Iowa 1980).

■ This case is distinguishable from *Prouse* where the Supreme Court held that random stops of cars in transit without at least an articulable and reasonable suspicion of illegality were unconstitutional. *Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 674. Stopping a car in transit is obviously a seizure. In Harlan's case, there is no evidence that Hinton stopped the car. The record does not even establish that Harlan knew Hinton had parked behind him and exited to approach the car. There is no evidence that Hinton restrained the car while he observed Harlan. The earliest point at which a seizure implicating the fourth amendment may have occurred was when Hinton asked for Harlan's driver's license and requested that he perform field sobriety tests. We conclude that after observing defendant, Hinton had an articulable and reasonable suspicion that Harlan was driving under the influence of alcohol.

Hinton testified that as he walked up to the car, "I could see the driver as he turned to me, and his eyes were bloodshot and watery and I could immediately smell alcohol on his breath . . . ." This is enough to allow a reasonable suspicion that Harlan was driving under the influence of alcohol. *See State v. Aschenbrenner*, 289 N.W.2d 618 (1980). Harlan's fourth amendment rights were not violated.

The trial court correctly overruled defendant's motion to suppress and admitted the evidence of defendant's intoxication at trial. The case is affirmed.

AFFIRMED.