# IN THE SUPREME COURT OF IOWA

No. 119 / 07–0824

Filed October 10, 2008

**STATE OF IOWA,**

    Appellant,

vs.

**RICHARD S. WILKES,**

    Appellee.

---

Appeal from the Iowa District Court for Cass County, Timothy O'Grady, Judge.

State seeks further review of court of appeals decision suppressing evidence as a result of a violation of the Fourth Amendment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER REVERSED; AND CASE REMANDED.**

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, and Daniel Feistner, County Attorney, for appellant.

Leslie G. Peters, Avoca, for appellee.

**APPEL, Justice.**

In this case, we consider whether the district court properly suppressed the results of sobriety and DataMaster tests obtained from a defendant who was parked in a truck when he was approached by uniformed police officers just before midnight. The court of appeals affirmed the district court's order of suppression. We now vacate the decision of the court of appeals, reverse the order of the district court, and remand the matter for further proceedings.

## I. Factual Background and Prior Proceedings.

Atlantic Police Officer Paul Wood and a reserve officer were riding in a patrol car on routine duty the night of January 12, 2007. Around midnight, Wood spotted a white truck with its headlights on and its engine running parked in Schildberg's Quarry. Although the record does not reveal the exact temperature, Wood testified that it was "pretty cold outside."

Wood pulled the patrol car into the quarry "to make sure everything was okay with the driver." While approaching the vehicle, Wood did not activate his emergency lights or siren. He pulled his patrol car to a distance of about ten or fifteen feet from the truck. Although the quarry had only one entrance, the patrol car did not block the entrance in any way.

After pulling up behind the truck, Wood and the reserve officer exited the patrol car and approached the vehicle. Wood observed that the truck was occupied by two people. Wood approached on the driver's side of the truck and the reserve officer walked toward the truck on the passenger side but stayed behind the vehicle. When Wood arrived at the driver's window, he "basically asked what was going on" and "made sure

everything was okay." Through the opened driver's window, Wood smelled the strong odor of an alcoholic beverage coming from the driver.

Wood then obtained identification information from both of the occupants and determined that the driver of the truck was Richard Wilkes. Wood returned to his patrol car to determine whether Wilkes had a valid driver's license and whether there were any outstanding warrants. After determining the status of Wilkes' driver's license and the lack of outstanding warrants, Wood walked back to the truck and requested that Wilkes step out of the vehicle. Wilkes complied and admitted to having consumed a glass of wine. Wood then administered the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged-stand test.

Wood concluded based on these field tests that there was a strong likelihood that Wilkes' blood-alcohol level was over the legal limit. Thereafter, Wood administered a preliminary breath test, which showed that Wilkes was intoxicated. At this point, Wood arrested Wilkes for operating a motor vehicle while intoxicated in violation of Iowa Code section 321J.2(1) (2005). A DataMaster test was later administered, showing Wilkes' blood alcohol level to be 0.123.

After Wilkes was charged with driving while intoxicated, he filed a motion to suppress, claiming that the stop by Wood amounted to an illegal seizure and that the evidence subsequently obtained should be excluded at trial. After a hearing, the district court concluded that Wilkes had been seized within the meaning of the Fourth Amendment. The district court further concluded that the seizure was not justified because Wood did not have a reasonable and articulable suspicion of criminal activity and because there was no evidence to suggest that Wood was conducting a bona fide community caretaking activity.

The State filed an application for a stay of proceedings and discretionary review, which we granted. The case was transferred to the court of appeals, which affirmed the district court. We granted the State's application for further review.

## II. Standard of Review.

Because the motion to suppress was based on a claim of deprivation of the defendant's constitutional right against unlawful seizures, this court's review is de novo. *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998).

## III. Discussion.

**A. Introduction.** This case presents two potential issues of constitutional law. The first constitutional question is whether Wood and the reserve officer in this case "seized" Wilkes under the Fourth Amendment prior to reasonably suspecting Wilkes was driving a motor vehicle while intoxicated. *See, e.g., United States v. Drayton*, 536 U.S. 194, 210, 122 S. Ct. 2105, 2111, 153 L. Ed. 2d 242, 257 (2002). If no such seizure occurred, the motion to suppress is without merit. To the extent Wilkes was subject to seizure *after* Wood had reasonable suspicion that Wilkes was driving while intoxicated, such evidence is admissible. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968).

In the event evidence was obtained pursuant to a seizure prior to reasonable suspicion that a criminal offense may have been committed, the police may have acted properly if the seizure amounted to a "community caretaking activity." Such seizures have been held not to violate the Fourth Amendment if the interest in community welfare outweighs any invasion of privacy that accompanies the seizure. *State v. Carlson*, 548 N.W.2d 138, 142 (Iowa 1996). If, however, the conduct of

Wood and the reserve officer amounted to a seizure and their actions do not amount to a valid community welfare check, a violation of the Fourth Amendment is present and the evidence obtained pursuant to the unlawful conduct must be suppressed. *State v. Crawford*, 659 N.W.2d 537, 541 (Iowa 2003).

Wilkes also seeks to exclude evidence on nonconstitutional grounds. He asserts that because the field sobriety tests were improperly administered, implied consent was improperly invoked for want of probable cause. On appeal, he also asserts that the results of the DataMaster test should be suppressed because he had chewing tobacco in his mouth when the test was administered.

**B. Constitutional Issues.** The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . ." U.S. Const. amend. IV. "The Fourth Amendment, which is made applicable to the states through the Fourteenth Amendment, gives citizens broad protection against warrantless searches and seizures." *Crawford*, 659 N.W.2d at 541. The purpose of the Fourth Amendment is to protect "the privacy and security of individuals against arbitrary intrusion by government officials." *State v. Brecunier*, 564 N.W.2d 365, 367 (Iowa 1997).[1]

---

[1]Article I, section 8 of the Iowa Constitution also contains a right to be free from unreasonable searches and seizures. Iowa Const. art. I, § 8. We zealously guard our ability to interpret the Iowa Constitution differently from authoritative interpretations of the United States Constitution by the United States Supreme Court. *In re Detention of Garren*, 620 N.W.2d 275, 280 n.1 (Iowa 2000). On appeal, however, Wilkes makes no argument that the Iowa Constitution should be interpreted differently than the United States Constitution. Therefore, consistent with our prior cases, we for prudential reasons assume for the purposes of this appeal that the United States Constitution and the Iowa Constitution should be interpreted in an identical fashion. *Id.*

In order for the Fourth Amendment to apply in this case, there must first be a "seizure." The United States Supreme Court has not offered a comprehensive definition of the term. The Supreme Court, however, emphasized almost forty years ago that not all personal intercourse between the police and citizens involve seizures. *Terry*, 392 U.S. at 20 n.16, 88 S. Ct. at 1879 n.16, 20 L. Ed. 2d at 905 n.16. According to the Supreme Court, "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.*

Whether a "seizure" occurred is determined by the totality of the circumstances. *Drayton*, 536 U.S. at 207, 122 S. Ct. at 2113, 153 L. Ed. 2d at 255. Factors that might suggest a seizure include

> the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980). In contrast, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555, 100 S. Ct. at 1877, 64 L. Ed. 2d at 509–10.

The Supreme Court has on occasion stated that a seizure does not occur if "a reasonable person would feel free 'to disregard the police and go about his business. . . .' " *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389, 398 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 1552, 113 L. Ed. 2d 690, 698 (1991)). Nonetheless, the Supreme Court has recognized that many persons respond to police requests even if they are free to leave. The fact

that a citizen chooses to respond, however, does not convert an encounter into a seizure. According to the Supreme Court, "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado*, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762, 80 L. Ed. 2d 247, 255 (1984). It thus appears that objective indices of police coercion must be present to convert an encounter between police and citizens into a seizure. *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004).

The element of coercion is not established by ordinary indicia of police authority. The mere showing of a badge by a police officer does not create a seizure. *Florida v. Rodriguez*, 469 U.S. 1, 5–6, 105 S. Ct. 308, 311, 83 L. Ed. 2d 165, 170–71 (1984) (per curiam) (holding no seizure where officer approaches defendant in airport, shows him badge, and asks questions); *Delgado*, 466 U.S. at 212, 104 S. Ct. at 1760, 80 L. Ed. 2d at 252–53 (finding that immigration agents wearing badges and questioning workers did not constitute a seizure). The fact that an officer is in uniform or visibly armed "should have little weight in the analysis." *Drayton*, 536 U.S. at 204, 122 S. Ct. at 2112, 153 L. Ed. 2d at 254.

This court has applied the teachings of the Supreme Court's seizure cases to situations where police officers approach parked vehicles. *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981). Other state and federal courts have taken a similar approach. *See United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994); *United States v. Pavelski*, 789 F.2d 485, 488–89 (7th Cir. 1986); *Riley v. State*, 892 A.2d 370, 374 (Del. 2006).

In *Harlan*, we considered whether a seizure occurred for Fourth Amendment purposes when a police officer discovered signs of

intoxication after he approached the driver of a parked vehicle in the early morning hours. *Harlan,* 301 N.W.2d at 720. The police officer followed the vehicle for several blocks along "a circuitous route." *Id.* at 719. The officer did not have reason to suspect that criminal activity was afoot. *Id.* Eventually, the driver returned to the street outside the house where the officer had first observed him and parked the vehicle leaving the engine running. *Id.* The officer pulled over and approached the driver. *Id.* When the officer shined his flashlight into the vehicle, he observed that the driver's eyes were watery and bloodshot. *Id.* The officer also smelled alcohol coming from the driver's person. *Id.* The officer subsequently requested his driver's license, asked him to perform field sobriety tests, and arrested him for operating a motor vehicle while intoxicated. *Id.*

We determined under the facts in *Harlan* that no seizure occurred prior to the point at which the police officer had reasonable suspicion to believe that Harlan was driving his vehicle while intoxicated. *Id.* at 720. Citing *Terry* and *Mendenhall,* we emphasized that the facts showed there was no threat of physical force, no use of language, no use of sirens, and no forced stop. *Id.* We noted that the officer, like any other citizen, had a right to look into the car. *Id.* As a result, no seizure occurred when the officer merely approached Harlan's parked vehicle. *Id.*

We find that this case is similar in many respects to *Harlan.* While the court of appeals emphasized that Wood was in uniform and shined headlights on the truck, these facts are not dispositive on the seizure issue. While the fact that Wood was in uniform is not entirely irrelevant, the United States Supreme Court has downplayed the significance of a police uniform as a factor in determining whether an encounter is a seizure. *Drayton,* 536 U.S. at 204, 122 S. Ct. at 2112, 153 L. Ed. 2d at

254. Further, the use of ordinary headlights at night is simply not coercive in the same manner as the activation of emergency lights which invoke police authority and imply a police command to stop and remain. *See State v. Calhoun*, 792 P.2d 1223, 1225 (Or. Ct. App. 1990) (noting that the use of headlights and spotlight did not transform the encounter into a seizure).

While it is true that in this case two officers were involved in the encounter, the reserve officer remained behind the vehicle and did not use physical force or show authority in any manner. The involvement of two officers in this fashion was certainly less threatening than in *Delgado*, a case in which the Supreme Court held that no seizure occurred where immigration officers stood at the exits of a building while colleagues questioned employees. *Delgado*, 466 U.S. at 218, 104 S. Ct. at 1763–64, 80 L. Ed. 2d at 256.

The fact that Wood parked behind the vehicle driven by Wilkes also does not convert the encounter into a seizure. A number of the cases involving encounters between police officers and citizens in parked vehicles have considered the location of the patrol car(s) in relation to the parked vehicle as a factor in determining whether a seizure occurred under the Fourth Amendment. For example, in *People v. Cascio*, 932 P.2d 1381, 1386–87 (Colo. 1997), the court concluded that if the police car wholly blocks the defendant's ability to leave, then an encounter cannot be considered consensual, but where egress was only slightly restricted, with approximately ten to twenty feet between the two vehicles, the positioning of the vehicles does not create a detention.

Here, the ability of Wilkes to drive away was not substantially impaired. In fact, Wilkes testified at the suppression hearing that there

were at least two ways for him to turn his truck around and leave the quarry, had he chosen to do so.

We conclude under all the facts and circumstances that no seizure occurred under the Fourth Amendment when Wood approached the vehicle. Simply put, neither of the officers displayed coercive or authoritative behavior to transform this encounter into a seizure for Fourth Amendment purposes. Prior to smelling alcohol on Wilkes' person, the stop was consensual. Once Wood smelled the alcohol, he had a reasonable and articulable suspicion of criminal activity to detain Wilkes and administer sobriety tests. *See* Mark A. Bross, *The Impact of* Ornelas v. United States *on the Appellate Standard of Review for Seizure Under the Fourth Amendment*, 9 U. Pa. J. Const. L. 871, 881 (2007) (noting that a voluntary encounter may turn into seizure supported by reasonable suspicion or probable cause). As a result of our determination that a seizure did not occur until after Wood had a reasonable suspicion sufficient to restrain Wilkes, it is not necessary to consider whether the encounter was within the "community caretaking" exception to the Fourth Amendment.

**C. Nonconstitutional Challenges.** In the alternative, Wilkes on appeal challenges the veracity of DataMaster results on the ground that his use of chewing tobacco may have affected the result. This assertion, however, was not raised in the district court and is thus not preserved on appeal. *State v. Boer*, 224 N.W.2d 217, 221 (Iowa 1974).

Wilkes also claims the State lacked probable cause to invoke implied consent pursuant to Iowa Code section 321J.6. To support his argument, Wilkes argues that Wood improperly administered the walk-and-turn and one-legged-stand tests. Even if true, any irregularity with respect to the walk-and-turn and one-legged-stand tests has no legal

significance. Wood smelled the strong odor of alcohol on Wilkes' breath, obtained a concession that he had been drinking, and performed the horizontal gaze nystagmus test. Based on this information, Wood had an articulable suspicion to administer a preliminary breath test (PBT) pursuant to Iowa Code section 321J.5(1)(*a*). The results of the PBT constituted probable cause to invoke implied consent. Iowa Code § 321J.6(1)(*d*); *State v. Horton,* 625 N.W.2d 362, 364 (Iowa 2001).

## IV. Conclusion.

For the above reasons, the opinion of the court of appeals is vacated, the order of the district court suppressing the evidence is reversed, and the case remanded to the district court for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER REVERSED; CASE REMANDED.**

All justices concur except Baker, J., who takes no part.