# IN THE COURT OF APPEALS OF IOWA

No. 14-1495
Filed November 25, 2015

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**BENJAMIN WADE WILLIAMS,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Wapello County, Kirk A. Daily,

District Associate Judge.


       Benjamin Williams appeals from his conviction and sentence for

possession of a firearm as a felon and carrying weapons.  **REVERSED AND**

**REMANDED.**


       Mark C. Smith, State Appellate Defender, and Rachel C. Regenold,

Assistant Appellate Defender, for appellant.

       Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant

Attorney General, for appellee.


       Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Benjamin Williams appeals his convictions for possession of a firearm as a felon and carrying weapons. He asserts the district court erred in denying his motion to suppress and that trial counsel was ineffective for failing to argue that an investigatory stop, premised on an already-completed misdemeanor, is unconstitutional. We conclude the district court erred when it admitted the evidence because Williams was seized before the officer had reasonable suspicion to do so, resulting in a Fourth Amendment violation. Based on this conclusion, we need not address Williams's ineffective-assistance claim. Therefore, we reverse his convictions and remand.

**I. Factual and Procedural Background**

On June 5, 2013, Williams was arrested. The district court made the following findings of fact:

> On June 5, 2013 Officer Noah Aljets was on duty at approximately 12:46 a.m. and traveling east on Main St. in Ottumwa, Iowa. After he had just gone through the intersection of Main and Jefferson streets a van passed him and turned into a lot next to the laundromat. Although the laundromat was open and had lighted parking in front of it, the van pulled into a lot on the west side of the building, in the back of the lot, where it was unlit.
>
> The person in the van exited it and began walking rapidly on Main St. to the west. Based on his experience and training Aljets believes unlicensed drivers try to avoid law enforcement and often pull off the road quickly when they encounter an officer.
>
> In order to check out the driver's status, Aljets hit his siren, the driver came over to the squad car, and they conversed. The driver said he was going to a bar, but Aljets knew they were closed. He asked the driver if he had his ID, the driver responded he did, but then [he] said he didn't.
>
> Aljets then asked the driver for his name and date of birth; however, the driver said he wasn't sure whether his name on his ID was Ben or Benjamin. This also raised the officer's suspicions. The driver told the officer his driver's license was probably suspended. The officer believed he had probable cause to believe

> the defendant was suspended, cuffed him, and after confirming his driving privileges were suspended, arrested the defendant.
>
> While searching the defendant incident to this arrest, Aljets found a 9mm pistol in a holster in the defendant's rear pocket, which ultimately led to the within weapons charges being filed against defendant.

Williams was charged with possession of a firearm by a felon and carrying weapons. On October 24, 2013, Williams filed a motion to suppress, arguing the search and seizure was a violation of the Fourth Amendment. The district court denied the motion, and the case proceeded to a bench trial. On April 18, 2014, Williams was found guilty of the charges of possession of a firearm as a felon, in violation of Iowa Code section 724.26 (2013), and carrying weapons, in violation of Iowa Code sections 724.1 and 724.4(1). Williams appeals.

## II. Standard of Review

We review constitutional issues, including ineffective-assistance claims, de novo. *State v. Kreps*, 650 N.W.2d 636, 640 (Iowa 2002). We give weight to the district court's findings of fact but are not bound by them. *Id.*

## III. Seizure

Williams first asserts the district court erred when it denied his motion to suppress evidence, that is, the pistol found in his possession as well as his incriminating statements. He argues Officer Aljets stopped Williams without reasonable suspicion, then seized him when he used his siren to catch Williams's attention and gave him repeated orders to stand in front of the patrol car. Thus, he claims a Fourth Amendment violation occurred, and the evidence should have been suppressed.

When an officer, by means of physical force or a show of authority, restrains the liberty of a citizen, a seizure occurs. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). Factors indicating a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *State v. Wilkes*, 756 N.W.2d 838, 843–44 (Iowa 2008) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Additionally, the "activation of emergency lights . . . invokes police authority and implies a police command to stop and remain." *Id.*; *see also State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981) (noting that a police siren is a sign of authority, but holding no seizure occurred when no siren was used and the police officer simply shined his flashlight in the defendant's car).

Here, the evidence establishes that Officer Aljets exercised his authority to request Williams stop, rendering the encounter a seizure. The officer testified he "hit the siren horn" which made a "whoop whoop" sound in order to get Williams's attention. The use of the siren is clearly a show of authority. *See Harlan*, 301 N.W.2d at 720. After Williams turned around and approached the police vehicle, Officer Aljets requested that Williams stand in front of the squad car. Officer Aljets then began questioning Williams. We conclude, based on our case law and the totality of the circumstances, that Williams was seized. *See id.*; *see also State v. Lowe*, 812 N.W.2d 554, 570 (Iowa 2012) (noting that a "commanding" tone of voice is evidence of seizure).

Furthermore, we do not agree with the State's argument this was a consensual encounter. While it is true Williams approached the squad car

without Officer Aljets requesting him to do so, the "whoop whoop" of the police siren was enough of a show of authority to render the compliant contact involuntary. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (noting that a consensual encounter between a police officer and a citizen is constitutionally permissible, but the person must not feel compelled to speak with the officer or be submitting to a claim of lawful authority). Rather, the totality of the circumstances indicates a reasonable person would not feel free to leave. *See Harlan*, 301 N.W.2d at 720. Therefore, we conclude this encounter was a seizure under the Fourth Amendment; consequently, Officer Aljets was required to have had reasonable suspicion to initiate the stop. *See id.* at 720–21.

**IV. Reasonable Suspicion**

Given a seizure occurred, we must now decide whether Officer Aljets had reasonable suspicion to stop Williams. Williams argues that his actions did not give rise to reasonable suspicion, as he merely parked his vehicle and started walking away. Williams further claims he did not lose his Fourth Amendment protections while walking in a public place on a sidewalk.

For a seizure to be constitutional, the officer must have reasonable suspicion that a crime has occurred or is occurring. *Wilkes*, 756 N.W.2d at 843. An officer has reasonable suspicion to stop a citizen when he has "specific and articulable facts, which taken together with rational inferences from those facts," leads to a reasonable belief that criminal activity may have occurred. *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). The reason for this stop is for investigatory purposes, so an officer may confirm or dispel suspicions that criminal activity has taken place. *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa

2002). Because the stop is a seizure, the stop must be reasonable under the circumstances. *Id.*

Based upon this record, we conclude Officer Aljets did not have reasonable suspicion to initiate a stop. Though late at night, Williams's activities of parking in a laundromat parking lot and walking away do not support a reasonable and articulable suspicion of criminal activity. Nor do we believe that Officer Aljets's hunch that Williams was turning to avoid being questioned on the validity of his license was enough to form a belief that Williams was fleeing from a police officer. *See id.* at 642 (holding that flight from a police officer constituted reasonable suspicion, allowing the officer to make a constitutionally-permissible stop); s*ee also Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (holding law enforcement does not have the right to stop drivers merely to check on their driving status). Furthermore, Williams admitted to driving while his license was suspended only after he was stopped and questioned. Given these facts, Officer Aljets did not have reasonable suspicion to make the initial stop; consequently, the seizure of Williams was in violation of the Fourth Amendment. Moreover, because this Fourth Amendment violation occurred, the evidence discovered following the seizure should have been suppressed. We therefore reverse the order of the district court denying Williams's motion to suppress.

Because we reverse on the seizure issue, we need not address Williams's claim that trial counsel was ineffective.

For these reasons, we reverse Williams's convictions and remand for entry of an order consistent with this opinion.

**REVERSED AND REMANDED.**