# IN THE COURT OF APPEALS OF IOWA

No. 18-0483
Filed May 1, 2019

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**KARI LEE FOGG,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Boone County, Paul G. Crawford

(motion to suppress) and Stephen A. Owen (trial), District Associate Judges.

Kari Fogg appeals her conviction of operating while intoxicated.

**AFFIRMED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Melinda J.

Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Kari Fogg appeals her conviction of operating while intoxicated (OWI), first offense. She contends the district court erred in denying her motion to suppress evidence on the basis of an allegedly unreasonable seizure. She also argues her counsel rendered ineffective assistance in failing to object to alleged prosecutorial error in the State's closing argument.

## I.    Background Facts and Proceedings

Shortly before 10:00 p.m. on Tuesday, October 10, 2017, Officer Michael Frazier of the Boone Police Department was on routine patrol when he observed a silver Hyundai "driving really slow" at "ten miles per hour" through a residential area. Frazier circled the block and observed the vehicle's movement for another three or four minutes. The vehicle then turned north into a narrow alley located between the main streets. According to Frazier's testimony, the alley is not used often. The alley is abutted by houses, outbuildings, and driveways. Frazier paralleled the vehicle on one of the side streets and then waited for the vehicle to exit the alley at the end of the block. After waiting at the end of the block for roughly one minute, Frazier noticed the car had stopped in the middle of the alley and parked. When asked during the suppression hearing whether he was suspicious a crime was being committed, Frazier testified:

> I wasn't sure. A lot of burglaries happen on that side of town, so I wasn't sure if someone was getting dropped off to do vehicle burglaries or garage burglaries in the area. It was just all around suspicious. Just wanted to make sure they were okay.
> . . . .
> I really don't know. I mean it was just odd that someone would be parked right there at that time of night.

On cross-examination, Frazier conceded he was not under any belief that a crime had been committed. He elaborated:

> I thought it was a possibility something was going on or it was somebody that was broken down in the alley. I didn't know.
>
> . . . .
>
> I was suspicious of her driving behavior before and then where she was parked at at the time or where she had stopped at.

At trial, Frazier testified there was an increased rate of burglaries in the area over the summer months and Fogg's behavior on the night in question caused him concern "that someone was maybe cruising the alleys casing some garages."

Frazier turned east on the street north of the alley then "turned south into the alley and pulled in front of the vehicle to get out to see what was going on." Frazier observed the vehicle was still running, its headlights were illuminated, and it was occupied by a woman, later identified as Fogg. Frazier, without activating his emergency lights or siren or drawing his sidearm, parked his cruiser twenty to thirty feet in front of the Hyundai and approached. Because of the way the vehicles were situated, Fogg's only avenues for leaving would have been to back out of the alley or drive around Frazier's cruiser, the latter of which would have required Fogg to drive through yards along the alley. Fogg opened her car door, and Frazier questioned Fogg "whether everything was okay" and "what was going on," upon which Fogg advised "she lived in the area and she was checking to see if the alley was crooked or something to that effect, that she had to report to the city." Frazier detected a strong odor of alcohol emanating from Fogg's vehicle. Fogg was ultimately arrested and charged with OWI.

Fogg filed a pretrial motion to suppress arguing she was seized absent reasonable suspicion or probable cause in violation of her constitutional rights

under the state and federal constitutions. Following a hearing, the district court denied the motion, concluding Fogg was not seized in the constitutional sense or, alternatively, the seizure was supported by reasonable suspicion. A jury ultimately found Fogg guilty as charged. Fogg appealed following the imposition of sentence.

## II.      Analysis

### A.      Motion to Suppress

Fogg challenges the district court's denial of her motion to suppress, contending the court erred in concluding her encounter with Frazier did not amount to a seizure or, alternatively, if the encounter did amount to a seizure, it was supported by reasonable suspicion. "When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *Id.* (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). In evaluating the totality of the circumstances, we are entitled to consideration of evidence introduced at both the suppression hearing and trial. *See State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015). "Each case must be evaluated in light of its unique circumstances." *Coffman*, 914 N.W.2d at 244 (quoting *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012)). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

"The Fourth Amendment of the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa

Constitution protect individuals against unreasonable searches and seizures."
*State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867
N.W.2d 91, 99 (Iowa 2015). Evidence obtained following a violation of these
constitutional protections is generally inadmissible at trial. *See Wong Sun v.
United States*, 371 U.S. 471, 484–85 (1963); *Mapp v. Ohio*, 367 U.S. 643, 654–55
(1961); *Naujoks*, 637 N.W.2d at 111.

Fogg argues that Frazier's placement of his police cruiser in the alley
rendered the encounter a seizure. It is true that stopping an automobile and
detaining its occupants unquestionably amounts to a seizure within the meaning
of the state and federal constitutions. *See Delaware v. Prouse*, 440 U.S. 648, 653
(1979); *State v. Coleman*, 890 N.W.2d 284, 288 (Iowa 2017); *State v. Tyler*, 830
N.W.2d 288, 292 (Iowa 2013). Fogg concedes this case does not involve a
"textbook traffic stop" but argues "the circumstances of the encounter still
demonstrate that [she] was seized for constitutional purposes."

"[N]ot all personal intercourse between the police and citizens involve
seizures." *State v. Wilkes*, 756 N.W.2d 838, 842 (Iowa 2008); *accord State v.
Lowe*, 812 N.W.2d 554, 570 (Iowa 2012). "Only when the officer, by means of
physical force or show of authority, has in some way restrained the liberty of a
citizen may we conclude that a 'seizure' has occurred." *Wilkes*, 756 N.W.2d at 842
(quoting *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968)). In order "to convert an
encounter between police and citizens into a seizure," there must be "objective
indices of police coercion," which "is not established by ordinary indicia of police
authority," such as merely flashing a badge, wearing a uniform, or being visibly
armed. *See id.* at 843. Whether a seizure occurred depends on the totality of the

circumstances, and factors that might suggest a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 842–843 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "The use of sirens, flashing lights or other signals . . . might also constitute a show of authority that is a seizure." *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981). None of the foregoing factors are present here; the only allegation of police coercion in this case is the placement of Frazier's patrol car in front of Fogg's vehicle. We agree that the location of the cruiser in relation to the subject vehicle is "a factor in determining whether a seizure occurred." *Wilkes*, 756 N.W.2d at 844. However, our supreme court has cited with approval the conclusion of another state high court "that if the police car *wholly* blocks the defendant's ability to leave, then an encounter cannot be considered consensual, but where egress was only *slightly restricted*, with approximately ten to twenty feet between the two vehicles, the positioning of the vehicles does not create a detention." *Id.* (emphasis added) (citing *People v. Cascio*, 932 P.2d 1381, 1386–87 (Colo. 1997)). Here, the evidence is undisputed that Fogg's ability to leave was not "wholly" blocked; she could have backed out of the alleyway, and the evidence shows she was parked next to a driveway abutting the alley, which she could have turned around in; additionally, as conceded in her brief on appeal, she could have also driven forward, although that avenue would have required her to drive through yards along the alley. *Cf. id.* ("Here, the ability of Wilkes to drive away was not substantially impaired. In fact, . . . there were at least two ways for him to turn his

truck around and leave the quarry, had he chosen to do so."); *State v. Mathis*, No. 14-0861, 2015 WL1817111, at *2–3 (Iowa Ct. App. Apr. 22, 2015) (finding driver's ability to drive away was not "substantially impaired," as "[s]he had two means of egress. She could have backed out down the alley or she could have driven forward past the officers' vehicles."). Likewise, this is not a situation in which Fogg was in transit and Frazier's placement of his vehicle in her avenue of egress forced her to grind to a halt in the face of police authority; she was already stopped and parked in the alley. *See, e.g., Harlan*, 301 N.W.2d at 720 (noting "[s]topping a car in transit is obviously a seizure," but indicating approaching a stationary vehicle is less akin to a seizure); *Mathis*, 2015 WL1817111, at *3 ("[W]hen an officer does not stop a vehicle, but merely walks up to a vehicle that is already stopped, as any citizen might do, there has generally not been a seizure."); *State v. Bakula*, No. 08-0629, 2008 WL 500196, at *2 (Iowa Ct. App. Nov. 26, 2008) (finding fact that subject vehicle was already stopped when officer initiated encounter militated against the existence of a seizure). The circumstances in this case are nearly identical to those in another matter in which this court affirmed a denial of a motion to suppress, concluding no seizure occurred. *See generally Mathis*, 2015 WL1817111, at *1–3.[1]

---

[1] In *Mathis*, two officers in separate vehicles saw the defendant drive her vehicle into an alley. 2015 WL1817111, at *1. Without activating their lights or sirens, both officers drove into the alley where the defendant's vehicle was parked with the motor running. *Id.* One officer parked parallel to the subject vehicle, but facing in the opposite direction, and the other officer parked about thirty feet behind the first officer, which would have placed him in the defendant's forward avenue of egress. *See id.* The evidence showed "Mathis could have easily backed out down the alley. She could also have driven forward down the alley, although this would have required her to drive on the grass to get around" one of the officer's vehicles. *Id.* Ultimately, Mathis was charged with driving while barred, and she filed a motion to suppress, claiming she was improperly seized. On appeal, we affirmed the denial of the motion to suppress, concluding:

Here, Frazier was the sole officer involved in the initial encounter; he did not draw his sidearm; there was no physical touching between him and Fogg; his tone with Fogg was casual and non-aggressive; and he did not use sirens, flashing lights, or other signals of authority. Although Frazier's vehicle was situated in front of Fogg's, her ability to drive away was not substantially impaired. Simply stated, there were no objective indices of police coercion during this encounter; there was no show of authority here, which is a necessary prerequisite for a seizure. *See California v. Hodari D.*, 499 U.S. 621, 626–28 (1991). Consequently, upon our de novo review of the record and consideration of the totality of the circumstances, we agree with the district court that Fogg was not subjected to a seizure in the constitutional sense. We therefore affirm the district court's denial of her motion to suppress evidence.

B.      Ineffective Assistance of Counsel

Next, Fogg argues her "trial attorney was ineffective for failing to object to the State's prosecutorial error when the State disparaged defense counsel during closing argument." Ineffective-assistance-of-counsel claims are immune from error-preservation defects. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). We review such claims de novo. *State v. Albright*, ___ N.W.2d ___, ___,

---

The officers did not stop Mathis's vehicle. They did not have their lights and sirens on. The evidence showed Mathis's ability to drive away from the officers was not substantially impaired. She had two means of egress. She could have backed out down the alley or she could have driven forward past the officers' vehicles. There was no evidence the officers engaged in a display of force or used language that would have made Mathis believe she was compelled to comply with the request for her driver's license. The record in this case does not show there were objective indices of police coercion.

*Id.* at *3.

2019 WL 1302384, at *4 (Iowa 2019). Fogg must establish by a preponderance of the evidence that (1) her trial counsel failed to perform an essential duty and (2) the failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

Specifically, Fogg complains of the prosecutor's statements during closing rebuttal argument that "her attorney was intentionally misrepresenting the evidence and making disingenuous arguments because that was his role in defending a client" and urging "the jury to consider the prosecutor more trustworthy and honest because he did not have a client to defend." Generally, Fogg believes the prosecutor improperly accused defense counsel of unethical conduct by trying to twist the evidence in his client's favor.

However, upon our de novo review of the record, we find no reasonable probability of a different outcome had counsel objected to the complained-of statements. *See Albright*, ___ N.W.2d at ___, 2019 WL 1302384, at *5 ("For the second prong—prejudice—the claimant must prove there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's unprofessional errors."). The jury was specifically instructed it must base its verdict only upon the evidence presented and the court's instructions. The jury was also instructed statements, arguments, and comments by the lawyers are not evidence. Appellate courts presume juries follow the court's instructions, *State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012); *State v. Hanes*, 790 N.W.2d 545, 552

(Iowa 2010), and we are thus unconvinced that the complained-of statements had any effect on the jury's verdict.

Furthermore, we disagree with Fogg that "[t]he case was close." Although Fogg variously testified that she was not impaired on the night in question and attempted to explain away the State's evidence during her testimony, the State provided a mountain of evidence to rebuff her assertions. Fogg admitted to alcohol consumption, although initially denying the same, and the standard field sobriety tests she completed indicated she was impaired.[2] She also admitted to consuming several medications on the night in question, some of which cause dizziness and may impair one's ability to operate a motor vehicle. Video footage from Frazier's body camera showed Fogg to exhibit slurred speech and an inability to follow instructions during attempted field sobriety testing. Video footage of Fogg at the jail likewise showed Fogg, throughout the attempted exercise of her rights under Iowa Code section 804.20 (2017) and implied-consent-advisory procedures, to exhibit slurred speech; be in somewhat of a confused and emotional state; and have bloodshot, watery eyes. Frazier testified he continued to smell the odor of alcohol coming from Fogg's person throughout his more than two-hour encounter with her. She denied being impaired to Frazier, but refused to submit to both a preliminary breath test and chemical testing. The jury was instructed it could consider Fogg's refusal to submit to a breath test in reaching its verdict. Frazier testified he had "[n]o doubt" that Fogg was operating a motor vehicle while

---

[2] Fogg was subjected to the horizontal- and vertical-nystagmus tests. She declined to perform the walk-and-turn and one-legged-stand tests because she knew she would fail those tests.

intoxicated. Given the strong evidence of guilt, we find no reasonable probability of a different outcome had counsel objected to the complained-of statements. *See Albright*, ___ N.W.2d at ___, 2019 WL 1302384, at *5.

We find counsel's alleged failure did not result in prejudice to Fogg, and counsel therefore did not render ineffective assistance.

## III. Conclusion

Having found the district court correctly denied Fogg's motion to suppress and counsel was not ineffective as alleged, we affirm Fogg's conviction of OWI, first offense.

**AFFIRMED.**