# IN THE COURT OF APPEALS OF IOWA

No. 22-0037
Filed April 26, 2023


**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**DONALD MELVIN WITTENBERG,**
      Defendant-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Becky Goettsch, District Associate Judge.


A defendant appeals the denial of his motion to suppress following his conviction for operating while intoxicated. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, Josh Irwin, Assistant Appellate Defender, and Danielle Dunne, Law Student, for appellant.

Brenna Bird, Attorney General, Genevieve Reinkoester, Assistant Attorney General, and Kadison Roberts, Law Student, for appellee.


Heard by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

Donald Wittenberg appeals the district court's denial of his motion to suppress following his conviction for operating while intoxicated (OWI), third offense, in violation of Iowa Code section 321J.2(2)(c) (2021). In his motion to suppress, he argued that the only evidence against him stemmed from an unconstitutional seizure when police officers approached his parked car without reasonable suspicion. Based on the totality of the circumstances, we do not find Wittenberg was seized when officers parked near him, shined a spotlight into his car, and approached him on foot with flashlights, so we affirm the district court's denial of his motion to suppress.

**I. Facts and Prior Proceedings.**

At 2:23 a.m. on April 6, 2021, Officer Justin Shelberg was doing field training with Officer Frederick when he noticed a car pull away from a bar and turn into another parking lot. Officer Shelberg believed the car was moving faster than one typically would in a parking lot as if the driver, later determined to be Wittenberg, believed he was on a street and the businesses in the parking lot were all closed. Wittenberg brought the car to an abrupt stop just before hitting a curb and shut off the car's lights; he was only partially in a parking space. Officer Shelberg pulled into the lot—he did not activate his emergency lights, but he did turn on his patrol car's spotlight because it was dark. According to Officer Shelberg's testimony at the suppression hearing, he was parked thirty to thirty-five feet behind and to the left of Wittenberg at an angle.[1] Because there was a curb in front of Wittenberg's

---

[1] Officer Shelberg testified he parked behind Wittenberg rather than next to him for officer safety because when "approach[ing] from behind the vehicle . . . I can get

vehicle, Wittenberg could not have driven forward. And for Wittenberg to drive his vehicle straight backward, Officer Shelberg would have needed to move the patrol car. But the dash cam footage showed room for Wittenberg to maneuver out of the parking space to exit around the patrol car without it being moved[2]—Wittenberg's vehicle was not boxed in. The parking lot had two exits, and Officer Shelberg admitted his position partially blocked one of them while the other was clear. He and Officer Frederick approached Wittenberg's car on foot; Officer Shelberg went to the driver's side window, which was lowered about one-fourth of the way, while Officer Frederick looked in through the front passenger's side window. Both officers had flashlights. Once they engaged, Officer Shelberg first asked if Wittenberg "actually intended to turn on the street" and if he "knew he was in a parking lot." He then observed Wittenberg with bloodshot, watery eyes and slurred speech. Wittenberg admitted he had been drinking that night.

Officer Shelberg was informed by dispatch that Wittenberg's driver's license was suspended, and he called for backup. He asked Wittenberg to step out of the car, which Wittenberg did, and then asked him to complete field sobriety tests, which Wittenberg refused. Officer Shelberg detained Wittenberg and took him to the Altoona Police Department; while processing there, Officer Shelberg noted a strong smell of alcohol. At 2:48 a.m., he read Wittenberg his *Miranda* rights. Wittenberg refused further testing. Wittenberg was charged with OWI, third offense.[3]

---

a light on the vehicle and see inside the vehicle rather than be to the left or to the right of it in case somebody [was] to have a weapon on them."

[2] The court also made this observation in the ruling on the motion to suppress.

[3] Wittenberg stipulated to his past OWI convictions.

Wittenberg filed a motion to suppress,[4] arguing he was unconstitutionally seized when the officers originally approached him under both the Fourth and Fourteenth Amendments of the United States Constitution and article I, section 8 of the Iowa Constitution. The State argued Wittenberg was not seized; but, in the alternative, it argued that if Wittenberg was seized, it fell within the community caretaking exception. Footage from two police vehicle dashboard cameras and Officer Shelberg's body camera was admitted into evidence. The district court found that no seizure occurred and denied Wittenberg's motion to suppress on that ground.

A jury found Wittenberg guilty in October. He now appeals.

**II. Discussion.**

"'When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo.' We examine the entire record and 'make an independent evaluation of the totality of the circumstances.'" *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019) (citations omitted).

"Evidence obtained by illegal . . . seizure is not admissible." *State v. Stump*, 119 N.W.2d 210, 216 (Iowa 1963). Our supreme court "generally 'interpret[s] the scope and purpose of the Iowa Constitution's search and seizure provisions to track with federal interpretations of the Fourth Amendment' because of their nearly identical language." *Brown*, 930 N.W.2d at 847. Our threshold question is whether the defendant was seized, and "[t]he defendant has the burden of proof as to

---

[4] He also argued there were statements made after he was read his *Miranda* rights that were inadmissible, and the district court did suppress those statements.

whether a seizure occurred." *State v. Fogg*, 936 N.W.2d 664, 668 (Iowa 2019). "Whether a 'seizure' occurred is determined by the totality of the circumstances." *State v. Wilkes*, 756 N.W.2d 838, 842 (Iowa 2008). "[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). As the Supreme Court has explained,

> a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

*Florida v. Bostick*, 501 U.S. 429, 434 (1991). In looking at the circumstances, we look for factors that might suggest a seizure, such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Wilkes*, 756 N.W.2d at 842–43 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Wittenberg argues a reasonable person would not feel free to leave when officers park their car behind them, shine a spotlight on their car, and approach them on foot with flashlights directed into the car. But, none of these factors are sufficiently coercive to amount to a seizure. *See Fogg*, 936 N.W.2d at 669 ("We recognize that one of the norms of society we have grown up with is that we should cooperate with law enforcement. Fogg may have been operating under that norm. However, for a seizure to occur, there must be more."). Wittenberg could have

driven away from the encounter. *See id.* at 670 ("It is true that Fogg could not have driven forward [because of the police vehicle]. However, she could have driven backward either with or without turning around. She was not 'boxed in.' '[T]here was an avenue by which [the defendant] could have actually left.'" (second alteration in original) (citations omitted)); *Wilkes*, 756 N.W.2d at 844 ("[I]f the police car wholly blocks the defendant's ability to leave, then an encounter cannot be considered consensual, but where egress was only slightly restricted, with approximately ten to twenty feet between the two vehicles, the positioning of the vehicles does not create a detention.").

A panel of this court recently stated the use of a spotlight is closer to the use of ordinary headlights at night as opposed to the activation of emergency lights.[5] *State v. Cyrus*, No. 21-0828, 2023 WL 152521, at *4 (Iowa Ct. App. Jan. 11, 2023); *see also Wilkes*, 756 N.W.2d at 844 ("Further, the use of ordinary headlights at night is simply not coercive in the same manner as the activation of emergency lights which invoke police authority and imply a police command to stop and remain."); *State v. Calhoun*, 792 P.2d 1223, 1225 (Or. Ct. App. 1990) (noting that the use of headlights and spotlight did not transform the encounter into a seizure); *State v. Bakula*, No. 08-0629, 2008 WL 5005196, at *2 (Iowa Ct. App. Nov. 26, 2008) (concluding a "bare assertion that the deputy's lights were on does not establish a seizure" when the top front lights were not flashing or spinning). And in *State v. Harlan*, our supreme court found that an officer shining a flashlight

---

[5] At oral argument, Wittenberg made a creative argument that the light would have shone in his eyes, making it more challenging for him to drive away. Still, in light of our prior case law, we do not find the use of the spotlight converted this encounter to a seizure.

into a car he did not cause to pull over[6] did not constitute a seizure. 301 N.W.2d 717, 719, 720 (Iowa 1981). Compounding these factors together, we agree this is a closer case than some others, but nevertheless we do not find there were the necessary "'objective indices of police coercion,' '[t]he element of coercion,' or 'coercive or authoritative behavior'" to shift this encounter to a seizure. *Fogg*, 936 N.W.2d at 669 (quoting *Wilkes*, 756 N.W.2d at 843, 844).

Wittenberg also argues that Officer Frederick walked behind the car to reach his passenger side window, briefly impeding his ability to leave. We do not find this was a show of authority or coercive, but was instead an activity any private person could engage in and so does not amount to a seizure. *See id.* ("One way of looking at [if a seizure has occurred] is whether the officer was simply engaging in activity that any private person would have a right to engage in.").

Because we find Wittenberg was not seized when Officer Shelberg pulled into the parking lot and approached his car, our analysis is not changed based on his allegation that Officer Shelberg had no reasonable, objective grounds for approaching him and that he had not violated any traffic laws. *See Riley v. California*, 573 U.S. 373, 381 (2014) ("As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" (citation omitted)). It is true that any detention, no matter how brief, must be supported by reasonable suspicion. *See Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality opinion). But Wittenberg was not detained—an "officer, like any other citizen, [has] a right to look

---

[6] Our analysis would take a different route had the officers pulled Wittenberg over rather than approaching Wittenberg's already-parked car. *See State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013) (noting "a traffic stop is unquestionably a seizure under the Fourth Amendment").

into [a] car," and this kind of "innocuous police-citizen encounter that did not implicate the [F]ourth [A]mendment [or article I, section 8]." *See Harlan*, 301 N.W.2d at 720. And because of this, "we need not decide whether this initial observation of [the defendant] was reasonable." *Id.*; *cf. id.* at 718 (noting the officer in *Harlan* did not see the defendant violate any laws before approaching).

**III. Conclusion.**

Considering the totality of the circumstances,[7] we agree with the district court that Wittenberg was not seized when officers approached his car and affirm the denial of his motion to suppress.

**AFFIRMED.**

---

[7] Wittenberg argued not only that he was seized, but that the seizure did not fall within the community caretaker exception. Because we find he was not seized, we need not consider this argument.