PER CURIAM:
 
 [1]
 

 hThe state has charged defendant with possession of cocaine in violation of La. R.S. 40:967(0(2). Defendant moved to suppress the evidence and after a hearing conducted on January 13, 2009, the trial court found no probable cause for defendant’s arrest and granted the motion. The Fourth Circuit found no abuse of discretion by the trial court and denied the state’s application for review.
 
 State v. Richardson,
 
 09-K-0105 (La.App. 4th Cir.3/2/09). However, we granted the state’s writ to review the decisions below and now reverse because testimony at the suppression hearing shows clearly that the police acquired probable cause to arrest defendant when he abandoned a crack cocaine pipe before, not after, the officers asked him to stop to discuss a complaint that he had been begging in violation of a city ordinance.
 

 At the hearing conducted on January 13,-2009, the state called a single witness, New Orleans Police Officer Nicholas Williams, assigned to the Fifth District Task Force. The officer related that on the night of January 6, 2008, he and his partner had just turned their patrol unit into a gas station located at Canal and North Galvez in New Orleans when they were approached by an individual |2who complained that a black male riding a bicycle had been repeatedly asking him for money. The man had told the bicyclist to stop harassing him and, even as he spoke to the officers, he pointed them in the direction of defendant, who was riding a bicycle across from them on the opposite side of Canal Street. The officers decided to give defendant a warning about begging people for money in the neighborhood and turned on Canal to approach him. According to Williams, Canal Street “is a fairly [well] lit street,” and he had his
 
 *256
 
 headlights on, but when he pulled within 30 feet of defendant, the officer activated his unit’s spotlight “as another tool to have a clearer vision of what’s going on.” Officer Williams observed defendant turn his head as he pedaled and look at him with a startled expression. The officer then observed defendant drop from his right hand a silver object as he continued riding along Canal Street close to the curb. Williams pulled along side the bicycle and his partner, taking advantage of the open window in the patrol car, asked defendant to stop. Defendant complied and while his partner asked him some questions, Williams walked back and retrieved the silver object. He immediately identified it as a crack pipe “because it had wire mesh at one end, and it was burned .... it looked like it still had some residue in it.” The officer placed defendant under arrest and in an incident search retrieved a single rock of crack cocaine from the breast pocket of his shirt.
 

 Officer Williams testified that he had no intent to arrest defendant for any violation of the city ordinance prohibiting public begging because he did not believe at the time that he had observed a crime and that he “was just going to approach Mr. Richardson and just let him know that it was a city law towards begging, and I needed to advise him to stop doing that, give him a warning.”
 
 See
 
 New Orleans, La., Code § 54-412(C)(1995)(“No person shall stand, sit, or remain next to or in a roadway or street, or upon the shoulder of any street or roadway, or upon a neutral ground of any street or roadway for the purpose of begging.... ”). However, while the officer may have had a subjective intent merely to approach |3the defendant and conduct a non-custodial interview with him, Williams conceded that when he activated his spot light, defendant looked back with an expression that “you might get on your face if I get behind your car and activate my lights and siren in an attempt to, you know, write you a ticket or something.”
 

 The defense argues here, as it did below, that defendant’s reaction to the spotlight was one that any reasonable person would have had and that the shining of the intense light, particularly when followed by the officers’ action in pulling up beside defendant and effectively impeding his progress by confining him close to the curb as he pedaled, amounted to a seizure of defendant without probable cause for an arrest or reasonable suspicion to conduct an investigatory detention. However, we agree with the state that even assuming a seizure for purposes of the Fourth Amendment took place, it occurred after, not before, defendant discarded his crack pipe, and that abandonment of the narcotics paraphernalia with visible residue giving rise to probable cause for an arrest was thus not attributable to any prior illegality by the police.
 

 As an initial matter, “law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen.... ”
 
 Florida v. Royer,
 
 460 U.S. 491, 497, 108 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)(White, J.);
 
 see also Florida v. Bostick,
 
 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)(“[T]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions .... is by no means novel; it has been endorsed by the Court any number of times.”) (citations omitted). Thus, an encounter between a police officer and a citizen “will not trigger Fourth Amendment scrutiny unless it loses its consensual
 
 *257
 
 nature.”
 
 Bostick,
 
 501 U.S. at 434, 111 S.Ct. at 2386. Because police officers remain free to approach any citizen to ask him a few questions “as long as [they] |4do not convey a message that compliance with their requests is required,”
 
 Bostick,
 
 501 U.S. at 435, 111 S.Ct. at 2386, the nature of the encounter turns decisively, and a person has been “seized” for purposes of the Fourth Amendment, “only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.”
 
 United States v. Mendenhall,
 
 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).
 

 The
 
 Mendenhall
 
 test marks the threshold at which the encounter loses its consensual character and may become a significant Fourth Amendment event. However, for those cases in which the police have not physically restrained an individual but have otherwise asserted their official authority over him, the decision in
 
 California v. Hodari D.,
 
 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) added the requirement to
 
 Mendenhall
 
 that the citizen actually submit to the officer’s authority before the Fourth Amendment threshold is crossed.
 
 Hodari D.
 
 thus clarified that the
 
 Mendenhall
 
 test is a
 
 “necessary,
 
 but not a
 
 sufficient
 
 condition for seizure ... effected through a ‘show of authority.’ ”
 
 Id.,
 
 499 U.S. at 628, 111 S.Ct. at 1551. After
 
 Hodari D.,
 
 a person has been seized for purposes of the Fourth Amendment only if he has been physically restrained or if he actually submits to an official show of authority under circumstances in which a reasonable person would understand that his freedom of movement had been decisively curtailed.
 
 United States v. Sealey,
 
 30 F.3d 7, 9 (1st Cir.1994). In Louisiana, the test of when a seizure occurs is slightly broader, as it encompasses not only actual restraint or submissions to the assertion of official authority, but also circumstances in which “the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is
 
 virtually
 
 certain.”
 
 State v. Tucker,
 
 626 So.2d 707, 712 (La.1993).
 

 In the present case, Officer Williams and his partner did not “seize” defendant when they swung their patrol car around and began following him as he | spedaled his bicycle on Canal Street and Williams’s activation of the spot light did not then convert the nature of the impending encounter into a non-consensual stop in the same way that use of blue flashers or police emergency lights invariably signal that some form of official detention in underway.
 
 See
 
 4 Wayne R. LaFave,
 
 Search and Seizure,
 
 § 9.4(a)(4th ed. 2004)(“So too, other police action which one would not expect if the encounter was between two private citizens-boxing the car in, approaching it on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or use of flashing lights as a show of authority — will likely convert the event into a Fourth Amendment seizure.”)(footnotes omitted). While the use of a spotlight to illuminate an individual or an automobile on a public street may constitute a seizure when combined with other circumstances, such as a blocking action taken by the police to impede any progress,
 
 see, e.g., State v. Chopin,
 
 372 So.2d 1222, 1224-25 (La.l979)(when police officers blocked defendant’s path by swinging their patrol unit around, switching on their bright lights, and braking three feet in front of him they seized defendant because their approach “clearly indicated that some form of official detention was imminent.”);
 
 Commonwealth v. Mulholland,
 
 794 A.2d 398, 402 (Pa.Super.Ct.2002)(seizure occurred
 
 *258
 
 when officer activated his patrol unit’s spotlight and “parked his cruiser in such a fashion as to make it difficult if not impossible for the van to leave the parking lot.”), it does not alone cause the encounter to lose its consensual character because it “may also indicate to the reasonable person that the officer is carrying out his community caretaking function, and such conduct is frequently necessary to protect officers during any type of night-time police-citizen encounter.”
 
 State v. Garcia-Cantu,
 
 253 S.W.3d 236, 245-46, n. 43 (Tex.Crim.App.2008)(eollecting cases);
 
 see, e.g., State v. Clayton,
 
 309 Mont. 215, 45 P.3d 30, 35 (2002)(no Fourth Amendment seizure occurred under circumstances in which “[t]he police officers did not initiate the stop, but only pulled in behind [the defendant] and shined the spotlight to determine how |Bmany people were in the vehicle. The officers did not have their sirens or emergency lights on and the encounter took place on a public street.”);
 
 cf. Texas v. Brown,
 
 460 U.S. 730, 739-40, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983)(“It is likewise beyond dispute that [the officer’s] action in shining his flashlight to illuminate the interior of Brown’s car trenched upon no right secured to the latter by the Fourth Amendment.... Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.”) (citations and footnote omitted).
 

 Moreover, even assuming that in the present case the mere activation of the patrol unit’s spot light constituted an assertion of official authority comparable to activating the police unit’s blue flashers, no seizure occurred at that moment because defendant responded not by stopping but by looking back briefly and continuing to pedal long enough to discard his crack pipe before the officers closed the 30 feet separating them and pulled along side of him. Even if at that point the officers could be said to have effectively blocked defendant’s progress by confining him to a narrow path along the curb after illuminating him with the spotlight, and that they thereby seized him for Fourth Amendment purposes when he stopped pedaling at their request because no reasonable person would have felt free under the circumstances to ignore them and go about his business, the crack pipe had already been discarded and Officer Williams remained free to retrieve it.
 
 State v. Andrishok,
 
 434 So.2d 389, 391 (La.l983)(“Where officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized by the police officers. If, however, property is abandoned without any prior unlawful intrusion into a citizen’s right of freedom from governmental interference, then such property may be lawfully seized.”). It further appears that at the point defendant discarded his crack pipe the officers were not coming upon him with such force or had seized such 17unquestioned command of the situation that an actual stop was certain to occur.
 
 See State v. Robinson,
 
 471 So.2d 1035, 1037 (La.App. 1st Cir.l985)(when police officer spotted rape suspect riding a bicycle in the opposite lane of traffic, turned around, came along side and told him he wanted to speak to him, suspect jumped off the bicycle, fled, and escaped over a fence too high for the officer’s canine unit to negotiate).
 

 The ruling of the trial court granting defendant’s motion to suppress is therefore reversed and this case is remanded to the court for further proceedings consistent with the views expressed herein.
 

 JUDGMENT OF THE TRIAL COURT GRANTING THE MOTION TO SUP
 
 *259
 
 PRESS REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice
 
 Pro Tempore,
 
 participating in the decision.