Judgment rendered June 26, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 52,739-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ROOSEVELT T. ARDISON                        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 349995

Honorable Erin Leigh Waddell Garrett, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Chad Ikerd

JAMES EDWARD STEWART, SR.             Counsel for Appellee
District Attorney

ROSS STEWART OWEN
ERICA N. JEFFERSON
CHARLES KENNETH PARR
Assistant District Attorneys

* * * * *

Before WILLIAMS, McCALLUM, and THOMPSON, JJ.

WILLIAMS, C.J., dissents with written reasons.

**McCALLUM, J.**

Roosevelt Ardison appeals his convictions for possession with the intent to distribute cocaine and for possession of a firearm or carrying a concealed weapon by a convicted felon, and the concurrent 20-year sentences that he received for his convictions.

We affirm his convictions, vacate his sentences, and remand for resentencing.

**FACTS**

Donald Belanger Jr. is an agent with the Shreveport Police Department's street level interdiction unit. John Witham is a narcotics agent with the Caddo Parish Sheriff's Office ("CPSO"). On June 8, 2017, Belanger and Witham were on patrol in the 1600 block of Oakdale Street in Shreveport when they came upon a "trap house" located at 1653 Oakdale. A trap house is a house where drug dealers, who do not live at that particular home, gather to ply their trade.

As they pulled up to the trap house, the agents saw one male, defendant Roosevelt Ardison, standing in the driveway with a small female child with him. Two older males were sitting in chairs in the driveway. Ardison, who began walking toward the street when the agents approached the men, complied when Belanger asked him to step back into the driveway. Meanwhile, Witham dealt with the other two men.

Belanger, noting that Ardison was looking around and fearing that he may be armed because of the number of drug and weapon arrests that had been made at that location, decided to pat down Ardison for weapons. When Belanger touched Ardison's back and told him what he was doing, Ardison tried to pull away forcefully and violently. Belanger pinned Ardison's arms

1

against his body. During the struggle, a 9mm handgun in Ardison's waistband was exposed. Agent Witham successfully retrieved the weapon, which contained eight rounds in its magazine.

As Belanger took Ardison to the ground, Ardison threw a black object which turned out to be a sock containing a gram of cocaine packaged in 11 individual bags. While being interviewed by Belanger, Ardison admitted that the handgun was his, but claimed that he was only holding the cocaine for someone else.

Ardison was charged by bill of information with: (1) violating La. R.S. 14:95.1 by possessing a firearm or carrying a concealed weapon as a person convicted of certain felonies; and (2) violating La. R.S. 40:967(A)(1) by possessing a Schedule II CDS with the intent to distribute.

Ardison filed a motion to suppress the gun and drugs on the ground that the officers lacked justification to physically stop him from walking away by grabbing him. His motion to suppress was denied.

A jury trial was held in this matter on March 5-6, 2018. Tim Mills, a probation and parole specialist with Louisiana State Probation and Parole, testified that he supervised Ardison in connection with a November 28, 2000, guilty plea to distribution of a Schedule I CDS. Ardison was sentenced to 15 years' imprisonment at hard labor for that conviction. Ardison, who had a full-term parole date of December 23, 2017, was still under Mills' supervision at the time of his arrest for the instant offenses.

Ardison was convicted by the jury as charged. The jury was unanimous on the weapon charge, but not on the drug charge.

On May 8, 2018, Ardison filed a motion for a post-verdict judgment of acquittal and a motion for a new trial. Ardison appeared for sentencing

on September 12, 2018. The court denied the pending motions before sentencing Ardison to 20 years of imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on the firearm conviction. On the conviction of possession with the intent to distribute a Schedule II CDS, Ardison was sentenced to 20 years of imprisonment at hard labor, with two years to be served without the benefit of parole, probation, or suspension of sentence. The two sentences were to be served concurrently. Ardison was given credit for time served.

On September 27, 2018, Ardison filed a motion to reconsider sentence in which he contended that his sentences were constitutionally excessive and that the trial court failed to adequately consider his age. The trial court denied the motion on October 2, 2018.

Ardison has appealed, arguing that: (1) the trial court erred by denying his motion to suppress; (2) the trial court failed to adequately build a record with reasons justifying his concurrent sentences of 20 years; (3) his sentences are constitutionally excessive; and (4) his rights to due process and a fair trial were violated by Louisiana allowing a non-unanimous jury conviction.

## DISCUSSION

### *Motion to suppress*

In his motion to suppress the drugs and weapon, Ardison argued that the evidence should be suppressed because the agents lacked a reason or cause to stop him.

Agent Belanger testified at the hearing on the motion to suppress that he and Agent Witham were on routine patrol when they stopped at a home in the 1600 block of Oakdale that was well-known as a trap house. Belanger

described a trap house as a home where nobody in particular lives, but where drug dealers set up shop. Belanger asserted that he had been at that residence many times for narcotics activity, and he considered it to be in a high crime area.

Ardison was standing in the driveway while holding the hand of a very young girl. Two older males were sitting in lawn chairs. Belanger noted that when they typically approached people outside that residence, someone would throw away drugs or weapons while running from the location.

As Belanger and Witham exited their vehicle and approached the three men, two of the men remained seated, but Ardison began walking out to the street. Belanger "cut off" Ardison's route and asked him to come back to the driveway, which Ardison did. Belanger noted that Ardison positioned the child between them and was acting in an evasive and suspicious manner. Based on Ardison's behavior and the nature of the location, Belanger began to suspect that Ardison may be armed. By the nature of the location, Belanger meant that it was a high crime and high drug area, and usually someone was armed whenever officers had gone to that particular residence. Belanger put his arm to Ardison's back, told him to relax, and stated he was going to pat him down. It was at that point that Ardison began resisting. The weapon in Ardison's waistband was revealed as the pair struggled.

Asked if he had blocked Ardison's way, Belanger explained that he walked around the back of Ardison and asked him to "come back over here." Ardison, who complied by changing direction toward the house, returned to nearly the same spot in the driveway where he had been originally standing.

4

Belanger noted that Ardison continued to act in an evasive manner as he stepped left and right while standing in the driveway, and that Ardison was looking around as if he was searching for an escape route. Ardison kept placing the little girl between them, and Belanger could not engage him in conversation. Accordingly, based on his knowledge, training, and experience, Belanger became suspicious that Ardison was involved in criminal activity. Belanger testified that he knew at that point that they needed to pat Ardison down, because they could not allow Ardison to continue without knowing that he was in fact unarmed. Ardison had his back to Belanger at the time.

Agent Witham, who was assigned to narcotics with the CPSO, testified that he had conducted four or five prior narcotics arrests or investigations in the 1600 block of Oakdale. In reference to 1653 Oakdale, Witham stated that it was a known drug location, he had executed search warrants at that house, and he also had an open case at the house at the time of his encounter with Ardison.

When Belanger and Witham first pulled up to the house, Witham thought Ardison resembled someone he had previously arrested for crimes involving drugs and guns. Witham described Ardison as looking like a "deer in the headlights" when they first made contact with him. Witham recalled that the two men sitting down were calm, but that Ardison looked like he knew that he was in trouble when he saw the officers. Witham also interpreted Ardison's body language as expressing that something that "just wasn't right" was taking place between Ardison and the other two men. Witham believed the little girl with Ardison was his daughter, and he

remembered that Ardison kept her close to him and basically used her as a shield while Belanger was talking to him.

Witham also recalled that Ardison was creating distance from the two other men when the officers first approached by making a "zigzag" motion back and forth. After Ardison complied with Belanger's request to come back, he continued with this motion while Belanger was talking to him.

The State argued at the hearing on the motion to suppress that the agents had reasonable suspicion to approach Ardison and conduct an investigatory stop based on Ardison's evasive and suspicious behavior, the home's history as a drug location known to the agents, and the high crime nature of the area.

At the conclusion of the hearing, the trial court denied the motion to suppress, stating, as follows:

> So, Mr. Bowers, I agree with a lot of your argument. But at the end of the day I'm going to deny the motion to suppress because of the expertise and observation that the agents were able to view and feel, for lack of a better word, without us being there. I think that the testimony that they provided indicated what amounted to reasonable suspicion for them. . . . based on what they testified to and I believe that their expertise, skill and training in that particular area gives them a leg up on something that I'm not able to see from right here. So based on that I'm going to deny the motion to suppress.

Ardison argues on appeal that the trial court erred in denying his motion to suppress because the agents did not objectively have reasonable suspicion to stop and frisk him. He urges that the agents did not observe any weapons or illegal activity when they stopped him from walking away from the driveway. Ardison contends that he was illegally seized when the agents called him back to the driveway and it was clear by the authority asserted that he was not free to leave.

6

Ardison maintains that the agents, who were dressed in uniform, made a show of authority by telling Ardison that he needed to stay and talk after he attempted to leave with his daughter. He argues that a reasonable person in his position would not have felt free to leave. Moreover, based on the information available to the agents at the time, there was not reasonable suspicion to detain him.

In response, the State argues that Belanger's approach and initial encounter with Ardison were consensual. The State further argues that an investigatory stop was justified when looking at the totality of the circumstances (Ardison's presence in a high crime area coupled with his nervousness and other suspicious actions upon approach of the officers) and considering the agents' experience.

The Fourth Amendment to the United States Constitution and Article 1, §5 of the Louisiana Constitution prohibit unreasonable searches and seizures. It is well settled that a search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement.[1] *State v. Thompson*, 2002-0333 (La. 4/9/03), 842 So. 2d 330.

One such exception was recognized in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), when the Supreme Court held that a police officer may, in appropriate circumstances and in an appropriate

---

[1] Ardison was still under parole supervision at the time of his arrest. A person on parole or probation has a reduced expectation of privacy under the Fourth Amendment and under Article I, §5 of the Louisiana Constitution. *State v. Angel*, 44,924 (La. App. 2 Cir. 1/27/10), 31 So. 3d 547. This reduced expectation of privacy allows reasonable warrantless searches of their person and residence by a probation or parole officer. *See* La. C. Cr. P. art. 895(A)(13)(a); *State v. Malone*, 403 So. 2d 1234 (La. 1981). However, neither agent involved in the encounter was a probation or parole officer.

manner, approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *State v. Morgan*, 2009-2352 (La. 3/15/11), 59 So. 3d 403. To satisfy the reasonableness requirement of the Fourth Amendment, police officers conducting an investigatory stop must have a reasonable suspicion supported by articulable facts that criminal activity "may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (citing *Terry*, *supra*).

The officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch as the Fourth Amendment requires some minimal level of objective justification for making the stop. *Sokolow*, *supra*.

Officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them. *United States v. Arvizu*, 534 U.S. 266, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).

When determining whether the officers had a particularized and objective basis for suspecting the person they stopped of criminal activity, a court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. *See United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State v. Huntley*, 1997-0965 (La. 3/13/98), 708 So. 2d 1048.

While a subject's presence in a high crime area alone is insufficient to support a reasonable suspicion of criminal activity, officers are not required to ignore a location's relevant characteristics to determine whether the circumstances are sufficiently suspicious to warrant additional investigation.

8

*Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). A subject's nervous, evasive behavior is another pertinent factor in determining reasonable suspicion. *Id.* Headlong flight is the consummate act of evasion. *Id.*

Presence in a high crime area, coupled with nervousness or flight or other suspicious actions upon approach of officers, is sufficient to justify an investigatory stop. *State v. Marshall*, 46,457 (La. App. 2 Cir. 8/10/11), 70 So. 3d 1106.

The *Terry* exception has been codified in La. C. Cr. P. art. 215.1, which reads, in part:

> A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.

At the trial on a motion to suppress, the State has the burden of proving the admissibility of any evidence seized without a warrant. La. C. Cr. P. art. 703(D).

This court reviews the district court's ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a *de novo* review to its findings of law. *State v. Hemphill*, 41,526 (La. App. 2 Cir. 11/17/06), 942 So. 2d 1263, *writ denied*, 2006-2976 (La. 3/9/07), 949 So. 2d 441.

A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. *State v. White*, 39,681 (La. App. 2 Cir. 5/11/05), 903 So. 2d 580.

When reviewing a trial court's pretrial ruling on a motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress and may review the entire record, including testimony at trial. *State v. Bates*, 51,890 (La. App. 2 Cir. 2/28/18), 246 So. 3d 672.

We begin our analysis by considering the nature of the initial encounter between Ardison and Agent Belanger. An encounter between a police officer and a citizen does not trigger Fourth Amendment scrutiny unless it loses its consensual nature. *Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

The Fourth Amendment is not violated when a law enforcement officer merely approaches an individual on the street or in another public place to ask him if he is willing to answer some questions or by putting questions to him if the person is willing to listen. *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). As long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. *Florida v. Bostick*, *supra*.

In *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), the Supreme Court concluded that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

*California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L.Ed.2d 690 (1991), added the requirement to *Mendenhall* that the person actually submit to the officer's authority before the Fourth Amendment threshold is

crossed. *State v. Richardson*, 2009-0638 (La. 10/20/09), 23 So. 3d 254. Thus, following *Hodari D.*, a person was seized for purposes of the Fourth Amendment only if he was physically restrained or if he actually submitted to an official show of authority under circumstances in which a reasonable person understood that his freedom of movement had been decisively curtailed. *State v. Richardson, supra.*

The initial encounter between Ardison and Agent Belanger retained its voluntary nature even after Ardison returned to the driveway following Belanger's request that he return. While Belanger "cut off" Ardison's route when he walked away as the agents approached, compare these facts to those in *State v. Lewis*, 2000-3136 (La. 4/26/02), 815 So. 2d 818. In *Lewis*, two police officers went to a housing project to investigate complaints that trespassers were selling drugs there. As Lewis and a companion approached the officers, Lewis and his companion separated. One officer stepped in front of Lewis while the other officer stepped in front of his companion in order to ask basic questions of them. When Lewis was asked for his identification, he began running from the officers. The Louisiana Supreme Court concluded that the officer's request for identification without any greater show of authority did not convert the encounter into a forcible detention.

Even if Fourth Amendment scrutiny was triggered when Belanger asked Ardison to return to the driveway, our consideration of the totality of the circumstances, while giving deference to the inferences and deductions of the agents, reveals that the agents had the requisite reasonable suspicion to stop Ardison.

11

Ardison was not merely present in a generic high crime area, as he was also present at the location of a known trap house. Belanger testified that as the agents approached the group, they tried to key on suspicious behavior, and Ardison was the only one displaying such behavior. According to Witham, Ardison looked like a "deer in the headlights" when the officers approached. In contrast, the two men sitting down remained calm. Accordingly, the trial court did not err in denying the motion to suppress.

### *Frisk for a weapon*

Ardison also argues that the agents lacked reasonable suspicion to frisk him for a weapon. He contends that even if the initial stop was lawful, a detention for questioning does not automatically give a law enforcement officer the authority to conduct a pat-down for weapons. He maintains that the only information the agents had prior to their interaction with him was that the location was a "high crime area," and that his subsequent refusal to converse with Belanger was not enough to cross the threshold of reasonable suspicion that he had a weapon. Ardison adds that his reaction to being grabbed is irrelevant to the determination of whether the agents had reasonable suspicion to seize him and pat him down.

The *Terry* court stated that if "an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id*., 392 U.S. at 24, 88 S. Ct. at 1881. The *Terry* court went on to hold that in such circumstances, when

"nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, [the officer] is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Id.*, 392 U.S. at 30, 88 S. Ct. at 1884-5.

This right of an officer to conduct a protective frisk is also codified in La. C. Cr. P. art. 215.1(B), which provides that "[w]hen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon."

The officer's suspicion that he is in danger is not reasonable unless the officer can point to particular facts which led him to believe that the individual was armed and dangerous. *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); *State v. Hunter*, 375 So. 2d 99 (La. 1979). The officer need not establish that it was more probable than not that the detained individual was armed and dangerous, but it is sufficient that the officer establish a "substantial possibility" of danger. *Id*. In determining the lawfulness of an officer's frisk of a suspect, courts must give due weight not to an officer's "inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *State v. Sims*, 2002-2208 (La. 6/27/03), 851 So. 2d 1039 (citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880).

The State counters that Ardison is precluded from having this particular issue reviewed by this Court because Ardison's argument that Agent Belanger lacked reasonable suspicion to conduct a frisk was not presented to the trial court. The State is correct on this point, as Louisiana

courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. *See State v. Brown*, 434 So. 2d 399 (La. 1983); *State v. Winzer*, 49,316 (La. App. 2 Cir. 10/8/14), 151 So. 3d 135, *writ denied*, 2014-2373 (La. 4/22/16), 191 So. 3d 1044.

Even if this Court considered Ardison's argument, we would find that Agent Belanger possessed the necessary justification for frisking Ardison for a weapon. The location where they were standing was known for narcotics. There is an association of weapons with drugs, and the agents had encountered individuals with weapons at that location in the past. Ardison was also acting in a suspicious manner as he had his back to Agent Belanger, was using a young child as a shield, was not standing still, and looked to be seeking an escape route. Under the circumstances, the frisk for weapons was justified.

### *Excessive sentence*

After pronouncing the sentence, the trial court stated that it had considered the fact pattern and the factors outlined in La. C. Cr. P. 894.1. In his motion to reconsider sentence, Ardison argued that his sentence was cruel and unusual and in violation of the Eighth Amendment, and that the court did not give adequate consideration to his age.

Ardison argues on appeal that his concurrent sentences of 20 years' imprisonment are constitutionally excessive and unsupported by the record. He complains that the trial judge did not tailor his sentences as she failed to state what specific factors she took into consideration when imposing the sentences. Ardison further complains that the judge failed to ask if he wanted to give a statement, and that no PSI report was ordered, submitted, or

14

reviewed by the court. Ardison maintains that the trial court failed to provide this Court with a record sufficient for review, and that his case should be remanded for full consideration on the record of the factors used in sentencing.

The State counters that Ardison failed to contemporaneously object to not being able to address the court, and therefore, he has waived this argument. The State also argues that the trial court complied with La. C. Cr. P. art. 894.1 as evidenced by the court stating it did so on the record. The State further maintains that the record shows a factual basis for the sentences imposed in this case, and that the sentences are not excessive because Ardison displayed a blatant disregard for the law.

A reviewing court imposes a two-prong test to determine whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for the sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions; and, where the record clearly shows an adequate factual basis for the sentence, resentencing is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Fontenot*, 49,835 (La. App. 2 Cir. 5/27/15), 166 So. 3d 1215.

The defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation are important elements to consider. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Boehm*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Boehm*, *supra*.

Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166.

A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Boehm*, *supra*.

Whoever violates La. R.S. 14:95.1 shall be imprisoned at hard labor for not less than 5, nor more than 20 years, without the benefit of probation, parole, or suspension of sentence, and be fined not less than $1,000.00, nor more than $5,000.00.

At the time of this offense, whoever committed the crime of possession with intent to distribute cocaine was subject to a term of imprisonment at hard labor for not less than 2 years, nor more than 30 years, with the first 2 years without benefits, and possibly a fine of not more than

16

$50,000.00. La. R.S. 40:967(B)(4)(b). The penalty provisions were amended by 2017 La. Acts. No. 281, effective August 1, 2017.

Even when a trial court assigns no reasons, the sentence will be set aside on appeal and remanded for resentencing only if the record is either inadequate or clearly indicates that the sentence is excessive. *State v. Honea*, 2018-0018 (La. App. 1 Cir. 12/21/18), 268 So. 3d 1117. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Thomas*, 1998-1144 (La. 10/9/98), 719 So. 2d 49.

The record does not provide an adequate basis to review the concurrent sentences for excessiveness. No PSI report was considered, and the trial court made only a blanket statement about considering the "fact pattern" and the factors outlined in La. C. Cr. P. 894.1. We discern nothing about Ardison's personal history and little about his criminal history from this record. Accordingly, we vacate his sentences and remand for resentencing.

### Conviction by a non-unanimous jury

Ardison makes a claim of *error patent* regarding his conviction for possession with the intent to distribute being based upon a jury verdict that was not unanimous. He maintains that the issue is a matter of federal constitutional law, and that the Louisiana Supreme Court is not the final arbiter of this issue.

Ardison contends that when a "reasonable" juror has doubt as to whether the State met its burden by voting not guilty, it is *per se* evidence that the State did not prove its case beyond a reasonable doubt. Thus,

17

Ardison concludes that his procedural and substantive due process rights were violated because the State failed to meet its burden of proving to the entire jury that Ardison possessed cocaine with the intent to distribute it.

In response, the State argues that Ardison failed to contemporaneously object to the jury composition, and thus, waived this argument. The State further contends that the new jury conviction law is inapplicable to Ardison because the law specifically applies to crimes committed after January 1, 2019, and Ardison committed the present offenses on June 8, 2017.

An amendment to Article I, §17 of the Louisiana Constitution was approved by voters in November of 2018. That Section now states:

> Jury Trial in Criminal Cases. A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. . . .

The Legislature amended La. C. Cr. P. art. 782(A) in 2018 to provide, in part:

> A case for an offense committed prior to January 1, 2019, in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.

In *State v. Ramos*, 2016-1199 (La. App. 4 Cir. 11/2/17), 231 So. 3d 44, *writs denied*, 2017-2133 (La. 6/15/18), 257 So. 3d 679, 2017-1177 (La. 10/15/18), 253 So. 3d 1300, Ramos argued that the trial court erred in denying his motion to require a unanimous jury verdict. Ramos complained

18

that La. C. Cr. P. art. 782(A) violated the Equal Protection Clause, and that Louisiana's statutory scheme permitting non-unanimous jury verdicts in non-capital felony cases should be declared unconstitutional.[2]  The Fourth Circuit held in Ramos that under current jurisprudence from the U.S. Supreme Court, non-unanimous 12-person jury verdicts are constitutional.

In reaching this result, the court in *Ramos* noted that in *State v. Bertrand*, 2008-2215 (La. 3/17/09), 6 So. 3d 738, the Louisiana Supreme Court reversed the trial court's finding that La. C. Cr. P. art. 782(A) violated the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  The Supreme Court stated as follows:

> Due to this Court's prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court's still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments.  With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.

*Id*., 2008-2215 at p. 8, 6 So. 3d at 743.

We recognize that on March 18, 2019, the United States Supreme Court granted certiorari in *Ramos* to consider whether the Fourteenth Amendment fully incorporates the Sixth Amendment guarantee of a unanimous verdict.  *Ramos v. Louisiana*, 139 S. Ct. 1318 (2019).  However, under current jurisprudence from the United States Supreme Court, non-unanimous 12-person jury verdicts remain constitutional.

---

[2] La. C. Cr. P. art. 782(A) provided at the time that "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict."

Under Louisiana law, the requirement of a unanimous jury conviction specifically applies only to crimes committed after January 1, 2019. The instant crimes were committed in 2017, and thus, the amended unanimous jury requirement is inapplicable to Ardison's case. Ardison's assertion of an "error patent" is without merit.

## CONCLUSION

For the foregoing reasons, Roosevelt Ardison's convictions are AFFIRMED, his sentences are VACATED, and this matter is REMANDED to the trial court for resentencing.

**WILLIAMS, C.J., dissents.**

I respectfully dissent. I cannot say the evidence demonstrates that the officer possessed articulable knowledge of specific facts which provided reasonable grounds to suspect defendant of illegal activity at the time of the stop.

The majority's assertion that defendant's return to the driveway was "voluntary" strains credulity in a situation where the officer walked from behind defendant to step in front of him and cut off his path. The evidence shows that a reasonable person in that situation would not have felt free to leave.

The testimony demonstrates that defendant did not run at the sight of the police, but began walking away with his child as the officers approached. Although this was a high-crime area, the police officers were not responding to a reported crime when they stopped at the house. In addition, the encounter did not occur late at night in a dimly lit area. The record shows that at the time defendant was prevented from leaving, the police officer's suspicion was based on defendant's presence in front of that house in a high crime area, his physical appearance and his behavior in walking away. These facts show that in stopping defendant, the officer was acting on nothing more than a hunch. The result of the trial court's ruling and this court's decision is to signal that a person who happens to reside in an area labeled as a high-crime zone has a reduced expectation of privacy and fewer rights than those who reside in low-crime areas.

When considering the totality of the circumstances, I cannot say the state met its burden to show that defendant's act of walking away as police approached at that location gave the officer the minimal level of objective

1

justification to make the investigatory stop of defendant. Based upon this record, I conclude the trial court erred in denying defendant's motion to suppress.