# IN THE COURT OF APPEALS OF IOWA

No. 21-0828
Filed January 11, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JAHEIM ROMAINE CYRUS,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Brendan E. Greiner (motion) and Odell G. McGhee II (trial), District Associate Judges.

Jaheim Romaine Cyrus appeals the denial of his motion to suppress. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Jaheim Romaine Cyrus appeals the denial of his motion to suppress. We find the officer did not create a coercive environment constituting an illegal search and affirm the district court's ruling.

**I. Background Facts & Proceedings.**

At 9:20 the evening of Friday, October 16, 2020, Officer Shawn Morgan was dispatched to check out a gold Chevrolet Impala that had been parking in different spots in a Des Moines residential neighborhood, drawing concern from a resident. The Impala was parked in a lawful manner when Officer Morgan arrived. As he neared the Impala, Officer Morgan trained the vehicle's spotlight on the vehicle, searching for persons in the car, then training the spotlight on the driver's side door as he slowly pulled up to the Impala.[1] Officer Morgan turned on the top bar rear warning lights of his marked patrol vehicle as he parked his patrol vehicle in the middle of the street, to the side and to the rear of the Impala. He did not turn on the front-facing emergency lights.

As Officer Morgan's vehicle pulled up to the rear side of the vehicle, the driver, Cyrus, opened his door and looked back at the patrol car, making his hands clearly visible. The officer quickly got out of the patrol car, and said "How are you tonight?" Cyrus can be seen responding but cannot be heard on the dashcam video.[2] As Officer Morgan exited his car, Cyrus started to move, putting his foot

---

[1] Officer Morgan was uncertain whether the rear lights flashed red and blue or yellow. The flashing lights cannot be seen on the videos submitted into evidence.
[2] Although Officer Morgan was wearing a bodycam that day, he did not get the battery off the charger before speaking with Cyrus, leaving only the dashcam videos as evidence.

on the ground and placing his hand on the door as if he was going to get out. He then returned his foot back into the car as Officer Morgan walked around the front of the patrol car. Officer Morgan agreed he spoke to Cyrus as he rounded the front of his car toward the rear of Cyrus's vehicle, but it is unclear from the video what was said. The first part of the encounter cannot be heard on the video available. Cyrus testified he asked the officer if he could get out of the car and the officer said, "No, just stay in the car."

The officer walked to the back of Cyrus's vehicle to call in the license plate number. When Officer Morgan approached the driver's open door to speak with Cyrus, he smelled burnt marijuana. Officer Morgan placed his left arm on top of the car door and stood at the open door to speak to Cyrus. The officer used his flashlight to illuminate the inside of the vehicle again. Cyrus handed something to the officer, and we are able to see Officer Morgan speaking to him. Cyrus got out and turned to face the vehicle and put his hands behind his back. Officer Morgan placed Cyrus in handcuffs and patted him down. A bullet was found in Cyrus's pocket. After placing Cyrus into the patrol car, the officer entered the vehicle and searched the interior. He found a firearm in the center console of the vehicle. Cyrus was arrested and charged with carrying weapons and fourth-degree theft.

Cyrus filed a motion to suppress, asserting he was illegally seized when the officer approached his legally parked vehicle very slowly, pulled up in the middle of the road while training a spotlight on Cyrus, and ordered him to stay in his vehicle. He argues the seizure was without probable cause or reasonable suspicion, violating his rights under Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. Both Officer Morgan

and Cyrus testified at the hearing on the motion to suppress, and the court viewed dashcam video from the encounter. The district court denied Cyrus's motion, ruling that, under the totality of the circumstances, it was a consensual encounter where "a reasonable person in Mr. Cyrus'[s] position would have felt free to leave." The court found Cyrus not credible, ruled Cyrus's subjective feelings about whether he was free to leave were not relevant, and was not convinced Officer Morgan said anything directly to Cyrus after saying "How are you tonight?"

Cyrus waived his right to a jury trial and stipulated to a trial on the minutes of testimony. The court convicted Cyrus of carrying weapons, suspended his prison sentence, and placed him on probation.

Cyrus appeals the denial of his motion to suppress.

## II. Standard of Review.

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017). "We examine the entire record to independently evaluate the totality of the circumstances based on each case's unique situation." *State v. Price-Williams*, 973 N.W.2d 556, 561 (Iowa 2022). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *Brown*, 890 N.W.2d at 321 (citation omitted).

## III. Analysis.

The only question before us is whether Cyrus was seized within the meaning of the Fourth Amendment and article I, section 8 of the Iowa Constitution.

"The defendant has the burden of proof as to whether a seizure occurred." *State v. Fogg*, 936 N.W.2d 664, 668 (Iowa 2019).

"[O]ne of the norms of society we have grown up with is that we should cooperate with law enforcement." *Id.* at 669. When approached by an officer, the encounter is consensual "[u]nless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave." *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004) (citation omitted); *see United States v. Drayton*, 536 U.S. 194, 201 (2002) ("If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.").

> Whether a "seizure" occurred is determined by the totality of the circumstances. Factors that might suggest a seizure include
>> the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.
>
> In contrast, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."

*State v. Wilkes*, 756 N.W.2d 838, 842–43 (Iowa 2008) (internal citations omitted).

Our supreme court has recently explained:

> Regardless of how the totality-of-the-circumstances test is described, each case requires a conscientious examination of the conditions in which the consent was given with no one condition being dispositive. Going forward, courts should continue to apply our decades of precedent analyzing consent searches under the totality-of-the-circumstances test . . . , which we have held involves considering an unlimited universe of factors, including
>> *personal characteristics* of the [consenter], such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between

> the [consenter] and police preceding the consent, whether the [consenter] was free to leave or was subject to restraint, and whether the [consenter's] contemporaneous reaction to the search was consistent with consent.

*State v. Hauge*, 973 N.W.2d 453, 468 (Iowa 2022) (alterations and emphasis in original) (quoting *State v. Lane*, 726 N.W.2d 371, 378 (Iowa 2007)).

"One way of looking at the matter is whether the officer was simply engaging in activity that any *private* person would have a right to engage in." *Fogg*, 936 N.W.2d at 669 (emphasis in original). "The critical factor is whether the police [officer], even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens." *Id.* at 670 (quoting 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 581–82 (5th ed. 2012)). "The element of coercion is not established by ordinary indicia of police authority. The mere showing of a badge by a police officer does not create a seizure." *Wilkes*, 756 N.W.2d at 843. "The fact that an officer is in uniform or visibly armed 'should have little weight in the analysis.'" *Id.* (quoting *Drayton*, 536 U.S. at 204).

Cyrus suggests several factors combined to create a coercive environment. These factors include the use of rear-facing lights on the patrol car's light bar, the training of the spotlight on Cyrus's car door, and the officer's quick exit from the patrol vehicle. Cyrus also states the officer told him to remain in the vehicle and asks that we consider as a relevant circumstance the societal element of "driving while Black" in 2020.

The State goes through each element of the encounter individually to explain why it was not coercive,[3] including the fact that Officer Morgan testified he was trying to keep it casual and so would not have used the language "stay in the car." However, we have to look not only at the effect of each element alone, but the totality of the circumstances.

Iowa courts have long recognized "[t]he use of sirens, flashing lights or other signals . . . might . . . constitute a show of authority that is a seizure." *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981). More, the use of flashing lights–and the use of specifically colored flashing lights—is prescribed by statute. Iowa Code § 321.423 (limiting the use of flashing lights and specific colors to specialized vehicles). It is unclear from the record whether Cyrus could or did see the rear-facing flashing lights, which decreases their weight in the totality of the circumstances. Activation of the rear-facing lights, particularly if not seen by the driver, is insufficient on its own to establish a seizure. *See State v. Prusha*, 874 N.W.2d 627, 628, 630 (Iowa 2016) (stating a deputy "did not activate his vehicle's emergency lights" when he had "activated the vehicle's rear amber directional lights); *see also State v. Bakula*, No. 08-0629, 2008 WL 5005196, at *2 (Iowa Ct. App. Nov. 26, 2008) (concluding when the top front lights were not flashing or spinning, a "bare assertion that the deputy's lights were on does not establish a

---

[3] The district court declined to examine the State's argument that the officer had a reasonable suspicion of criminal activity, which is an exception to the warrant requirement, *see, e.g., State v. Warren*, 955 N.W.2d 848, 866 (Iowa 2021); the State properly did not raise the issue on appeal. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

seizure"). Even if they had been seen, the record indicates the flashing lights may have been amber, rather than emergency red and blue. *Cf.* Iowa Code § 321.279 (establishing the visual signal to stop under the eluding statute is "flashing red light, or . . . flashing red and blue lights"); *State v. Chumley*, No. 17-2036, 2018 WL 5839650, at *2 (Iowa Ct. App. Nov. 7, 2018) (clarifying "the accepted understanding of emergency lights as red and blue").

Next, we address the use of the spotlight. Our statutes provide any vehicle may have a spot lamp, and set minimal restrictions on their use. *See* Iowa Code § 321.402. We think the use of the spotlight is somewhat—though not entirely—analogous to the use of ordinary headlights. "[T]he use of ordinary headlights at night is simply not coercive in the same manner as the activation of emergency lights which invoke police authority and imply a police command to stop and remain." *Wilkes*, 756 N.W.2d at 844. While the spotlight may not be coercive in the same way as activated emergency lights, the manner in which it is used on a marked patrol car is certainly relevant to the question of whether a reasonable person would feel free to leave.[4]

---

[4] Other states generally agree the use of a spotlight alone is not sufficient to change the nature of the encounter from consensual to a seizure, but its use is relevant under a totality of the circumstances. *See, e.g.*, *State v. Baker*, 107 P.3d 1214, 1218 (Idaho 2004) ("This Court joins the many other jurisdictions which have held that the use of a spotlight alone would not lead a reasonable person to believe that he was not free to leave, though it may be considered under the totality of the circumstances."); *State v. Richardson*, 23 So.3d 254, 257 (La. 2009) ("While the use of a spotlight to illuminate an individual or an automobile on a public street may constitute a seizure when combined with other circumstances, such as a blocking action taken by the police to impede any progress, it does not alone cause the encounter to lose its consensual character because it 'may also indicate to the reasonable person that the officer is carrying out his community caretaking function, and such conduct is frequently necessary to protect officers during any type of night-time police-citizen encounter.'" (internal citations omitted)); *State v.*

The location of a patrol car in relation to a parked vehicle is "a factor in determining whether a seizure occurred under the Fourth Amendment." *Id.* Wholly blocking in a car cannot be considered consensual, "but where egress was only slightly restricted, with approximately ten to twenty feet between the two vehicles," vehicle positioning "does not create a detention." *Id.*; *see also Fogg*, 936 N.W.2d at 670 (finding when officer's vehicle blocked forward egress in an alley but defendant was not "boxed in" because "she could have driven backward either with or without turning around" and no seizure occurred); *State v. Kurth*, 813 N.W.2d 270, 278 (Iowa 2012) (holding the officer's decision to activate his emergency lights and block in the defendant's parked vehicle exceeded the scope of bona fide community caretaking activity). Here, Officer Morgan parked a few feet to the side and towards the back of Cyrus's vehicle, leaving Cyrus's vehicle adequate space to pull forward on the dead-end street to be able to turn around and leave. We recognize Officer Morgan's decision to park in the middle of the road increased the impact of the spotlight on Cyrus's door and was done in a manner not permitted to ordinary citizens. *Compare* Iowa Code § 321.361 (requiring vehicles stopped or parked on a road way be "parallel to and within eighteen inches of the right-hand curb), *with id.* § 321.231(2)(a) (allowing the driver of an authorized emergency vehicle to "[p]ark or stand an authorized emergency vehicle, irrespective of the provisions of this chapter" if using an audible warning device or "visual signaling

---

*Clayton*, 45 P.3d 30, 35 (Mont. 2002) (finding officers pulling in behind defendant and shining spotlight without siren or emergency lights did not constitute a seizure); *State v. Garcia-Cantu*, 253 S.W.3d 236, 245 n.43 (Tex. Crim. App. 2008) (collecting cases across jurisdictions examining the role of "blue flashers" and patrol car spotlights in determining whether the circumstances constitute a seizure).

device"). This created a setting where "police plainly have the upper hand and are exerting authority in a fashion that makes it likely that a citizen would not feel free" to act. *See State v. Pals*, 805 N.W.2d 767, 783 (Iowa 2011) (observing in a traffic stop, a citizen is unlikely to feel free to decline to consent to a search unrelated to the rationale of the stop); *see also Fogg*, 936 N.W.2d at 670. Yet, under our current case law, this is not enough to rise to the level of coercion marking an illegal seizure.

Finally, we come to the question whether Cyrus's minority status is relevant in our analysis. Cyrus raised an issue as to the officer's and Cyrus's subjective intents, citing a series of fatal encounters in 2020 of Black persons with police and relying on dissents in supreme court cases analyzing pretextual traffic stops. *See State v. Brown*, 930 N.W.2d 840, 867–68 (Iowa 2019) (Cady, C.J., dissenting) (examining the effect of implicit bias on an officer's choice when to enforce a traffic law); *id.* at 922–23 (Appel, J., dissenting) (looking at the harm caused by pretextual stops, racial profiling, and stigmatization). The State argues, "A reasonableness test that varies based on any individual's unique status would be exceedingly difficult . . . to apply fairly." The district court flatly rejected the subjective-intent argument, describing it as a "deviat[ion] from current precedent." It is not for this court to change the long-standing objective basis evaluation of a reasonable person. *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent."); *see also State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

We conclude that while the officer's actions placed Cyrus in a situation with an unarguable "moral and instinctive pressure[ ] to cooperate," Officer Morgan did not engage in conduct recognized by our courts as a coercive environment "significantly beyond that accepted in social intercourse" constituting an illegal seizure.  *See Fogg*, 936 N.W.2d at 670 (quoting 4 LaFave, *Search and Seizure* § 9.4(a), at 581–82).  Therefore, we affirm the district court's denial of Cyrus's motion to suppress.

**AFFIRMED.**