**IN THE COURT OF APPEALS OF IOWA**

No. 21-1670
Filed October 5, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TREVELL DEMON BRUCE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Brook Jacobsen, District Associate Judge.

        Trevell Bruce appeals the district court's denial of his motion to suppress evidence, alleging a constitutional violation of his right against unreasonable seizures. **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

We must decide whether the district court appropriately denied a motion to suppress evidence.

The episode underlying the motion began when Waterloo police officers were dispatched to a battered women's shelter on a report that one of the residents had been harassed or assaulted at some point and two men were seen walking through the parking lot and, later, seated in a parked sedan. The driver of the sedan was Trevell Demon Bruce.

One of the officers pulled up to "about a 45-degree angle to the driver's rear . . . corner" and turned on his "take-down" lights, which "illuminate anything in front of you so you can see better." His intent was to "see what their business was in the parking lot based on the concern of the people" at the shelter. He did not activate his "red and blue lights" because, in his view, "[i]t wasn't a traffic stop at this point." As the officer began to get out of his vehicle, the sedan started "rolling forward" and "pulling off." The officer "got back in" and "started following" the sedan. He "activated his top lights." The sedan stopped. The officer directed Bruce to put the car in park and cut the engine. Bruce instead took off at a speed "in excess of 70" miles per hour, traveling through residential neighborhoods with speed limits of approximately twenty-five miles per hour. In a short while, the officer saw the sedan crashed against a garbage can but still in drive. He apprehended Bruce in someone's backyard.

The State charged Bruce with eluding. Bruce moved to suppress evidence gained in what he contended was a warrantless seizure of his vehicle in violation of the Fourth Amendment to the United States Constitution and article I, section 8

of the Iowa Constitution. The district court denied the motion following an evidentiary hearing. Bruce agreed to a trial on the minutes of testimony, after which the district court found him guilty. Bruce appealed.

Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). "Because [Bruce] has not proposed a standard for interpreting our search and seizure provisions under the Iowa Constitution differently from its federal constitutional counterpart, we will apply the general standards as outlined by the United States Supreme Court for addressing a search and seizure challenge under the Iowa Constitution." *Id.* at 292.

A seizure requires a "show of authority *and* submission to that authority." *State v. Ivankovic*, No. 15-0622, 2016 WL 3269627, at *3 (Iowa Ct. App. June 15, 2016) (citing *California v. Hodari D.*, 499 U.S. 621, 627–29 (1991)). "A traffic stop is unquestionably a seizure under the Fourth Amendment." *Tyler*, 830 N.W.2d at 292. Although a stop is a seizure, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *see also State v. Struve*, 956 N.W.2d 90, 95 (Iowa 2021) ("[A]n officer [may] briefly detain a driver to investigate whether a traffic violation has been, or is being, committed, but only if the officer can establish reasonable suspicion for the stop."). "Reasonable suspicion to support an investigatory stop requires that the officer identify specific and articulable facts, which taken together with rational inferences from those

facts, to reasonably believe criminal activity may have occurred." *Struve*, 956 N.W.2d at 95–96 (quotations and citations omitted).

Bruce contends "law enforcement did not have reasonable suspicion upon which to justify the stop of [his] vehicle and but for the illegal actions of law enforcement no crime would have occurred." The State essentially concedes the officer lacked reasonable suspicion "to initiate a traffic stop based on the call from the women's shelter." The State instead argues the officer did not effectuate a constitutionally protected seizure until Bruce was apprehended in the backyard. That seizure, the State asserts, was supported by Bruce's conduct following the officer's order to stop at the intersection, specifically, his decision to "elude[ ] the officer" and "commit[ ] numerous traffic violations in the process."

As noted, a seizure requires a show of authority. We question whether there was a constitutional show of authority when the officer turned on his "take-down" lights and parked at an angle behind the sedan in the parking lot. *See State v. Fogg,* 936 N.W.2d 664, 667–69 (Iowa 2019) (finding no seizure where the officer "never activated the emergency lights on his vehicle" and "parked at least twenty feet away from [the defendant's] parked vehicle."); *State v. Wilkes*, 756 N.W.2d 838, 844 (Iowa 2008) (stating "the use of ordinary headlights at night is simply not coercive in the same manner as the activation of emergency lights which invoke police authority and imply a police command to stop and remain," and stating "[t]he fact that [the officer] parked behind the vehicle driven by [the defendant] also d[id] not convert the encounter into a seizure" because "the ability of [the defendant] to drive away was not substantially impaired."). But assuming the officer's conduct

amounted to a show of authority, Bruce did not submit to it. He ignored the officer's presence and maneuvered his car toward the street.

The officer followed, activating his overhead lights. Arguably, the flashing lights constituted a show of authority. *See State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981) ("The use of sirens, flashing lights or other signals to pull a moving vehicle to the side of the road might also constitute a show of authority that is a seizure." (citation omitted)). But again, Bruce did not submit to it. Despite being told to cut his engine, he accelerated down the road.

As Bruce sped away, the officer took off after him, with his overhead lights flashing and his siren blaring. This was an indisputable show of authority. *See Ivankovic*, 2016 WL 3269627, at *4 ("At the earliest here, any seizure occurred when the officer directed [the defendant] to shut off the ignition and removed his seat belt."). Bruce did not yield to that authority, continuing his flight along residential roads until he crashed the vehicle. Because Bruce did not submit to the officer's authority, no seizure occurred. *See Hodari*, 499 U.S. at 629 (holding that even if the officer's pursuit "constituted a 'show of authority' enjoining [the defendant] to halt, since [the defendant] did not comply with that injunction he was not seized until he was tackled"); *Brower v. Inyo Cnty.*, 489 U.S. 593, 596 (1989) ("The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the

termination of the suspect's freedom of movement would have been a seizure."). In the absence of a seizure, the Fourth Amendment was not implicated.

It matters little that the officer's initial show of authority in the parking lot and as he began to pursue Bruce was not supported by reasonable suspicion. As the Supreme Court stated, "Unlawful orders will not be deterred . . . by sanctioning through the exclusionary rule those of them that are not obeyed." *Hodari*, 499 U.S. at 627.

We are left with Bruce's argument that the stop was pretextual. The supreme court has stated, "unlimited discretion to stop vehicles on the open road may give rise to allegations of racial discrimination." *State v. Coleman*, 890 N.W.2d 284, 287 (Iowa 2017). At the same time, the court has reaffirmed that "the officer's subjective motivations are irrelevant under the Fourth Amendment to the United States Constitution so long as there is probable cause to support the stop." *State v. Brown*, 930 N.W.2d 840, 846 (Iowa 2019). In evaluating whether to adopt a different standard under the Iowa Constitution, the court "acknowledge[d] that police discretion can lead to racial profiling" but concluded the objective test applied in the Fourth Amendment context, together with other protections including district court assessments of officer credibility, would mitigate the risk of "abuse of authority." *Id.* at 849. Applying an objective test, the officer's motivation in parking behind Bruce and pursuing him is immaterial to the analysis of whether a seizure occurred. And, as discussed, the apprehension of Bruce was supported by probable cause in the form of numerous traffic violations, documented on the officer's dash camera video.

We conclude Bruce was not seized until he was apprehended. We affirm the district court's suppression ruling and Bruce's conviction, judgment, and sentence for eluding.

**AFFIRMED.**