# IN THE SUPREME COURT OF IOWA

No. 22–0037

Submitted October 10, 2023—Filed November 17, 2023

**STATE OF IOWA,**

Appellee,

vs.

**DONALD MELVIN WITTENBERG,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Becky Goettsch, District Associate Judge.

Defendant, claiming he was unlawfully seized in his parked car, seeks further review of court of appeals decision that affirmed the denial of his motion to suppress. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Martha Lucey, Appellate Defender; Josh Irwin, Assistant Appellate Defender; Danielle Dunne (until withdrawal), law student, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In this appeal, and in *State v. Cyrus*, ___ N.W.2d ___ (Iowa 2023), also decided today, each defendant argues his initial encounter with police constituted a seizure in violation of the Fourth Amendment to the U.S. Constitution and article I, section 8 of the Iowa Constitution. In both cases, officers trained a spotlight on the defendant driver in his parked car, and each defendant argues that show of authority, together with other circumstances, constituted a seizure. In each case, the district court disagreed and denied the defendant's motion to suppress, and the court of appeals affirmed. We granted further review to consider, for the first time, whether the use of a spotlight established a seizure. The seizure analysis is fact specific, and we decline to adopt a per se rule. Rather, for the reasons fully explained in *Cyrus*, *id.* at ___–___, we hold that police use of a spotlight is a factor to consider but is not necessarily determinative.

On our de novo review of the record in this case, we determine that the district court and court of appeals correctly found the defendant was not seized before the officer discovered his probable intoxication and lawfully detained him on that ground.

## I. Background Facts and Proceedings.

In the early morning hours of April 6, 2021, Altoona police officer Justin Shelburg was driving a marked patrol car with his field training officer, Tia Frederick. Both officers were in uniform. At 2:23 a.m., they saw a gray Chrysler 200 S back out of the parking lot of the Olde Town Tap and turn north. The Chrysler stopped at a stop sign before turning into an empty parking lot. The officers watched it drive across the lot at "a higher rate of speed" and feared it "was going to strike the curb" at the other end. The Chrysler stopped abruptly at the curb and shut off its lights, straddling two parking spots. Officer Shelburg

followed the Chrysler into the parking lot without activating the patrol car's overhead lights, emergency lights, or siren. He parked near the Chrysler without blocking it in. He trained his spotlight on the Chrysler. As he later testified, he did so more for "officer safety:"

> When it's dark out and we come into contact with people, we like to see inside the vehicle just in case they have weapons or anything like that, which was the primary objective in approaching the vehicle. At the time, I think I wanted to see if he was okay and see if he actually intended to turn on the street, and I wanted to know if he knew he was in a parking lot.

Officers Shelburg and Frederick exited their patrol car with flashlights and walked to the Chrysler—Officer Shelburg on the driver's side; Officer Frederick on the passenger's side. Officer Frederick walked behind the Chrysler to get to its passenger side. They shined their flashlights into the car. Officer Shelburg said "Hello" to the driver, who had his window rolled a quarter way down. The driver, who was chewing gum, responded, "How you doing, sir?" Officer Shelburg introduced himself and asked the driver if he thought he was on the roadway; the driver responded that he pulled into the parking lot because the officers were following him. Officer Shelburg "immediately could see [the driver's] bloodshot, watery eyes" and noticed the driver's "speech was slurred . . . and was slower." Based on these observations, Officer Shelburg immediately "recognized that [the driver] might be under the influence of alcohol." Officer Shelburg asked him, "[Y]ou've been drinking, bud?" To which he answered, "[Y]es sir." When asked how much he had to drink, he responded, "[A] little bit." The driver appears to be intoxicated on the bodycam video. Officer Shelburg elicited the driver's identity—Donald Wittenberg—and learned his license was suspended.

A second patrol car, driven by Officer Edwards, arrived at the scene. That officer did not interact with Wittenberg. Officer Shelburg asked Wittenberg to step out of the vehicle; Wittenberg complied. Officer Shelburg asked Wittenberg

to take field sobriety tests, which he refused. Officer Shelburg then detained Wittenberg and drove him to the Altoona police station. While en route, and again at the station, Wittenberg said aloud that he was "fucked." At the station, Wittenberg refused the breathalyzer test. Wittenberg was charged with operating a motor vehicle while intoxicated, third offense.

Wittenberg filed a motion to suppress all evidence, contending that he had been seized in violation of the Fourth Amendment to the U.S. Constitution and article I, section 8 of the Iowa Constitution when the officers partially blocked him in, trained a spotlight on him, and shined flashlights into his car from each side. He noted the patrol car blocked the exit, and his only way out was to back up and drive out the entrance. Wittenberg also moved to suppress statements he made during his ride to the station before he was given his *Miranda* warning there as well as statements made after that warning. The State resisted, arguing no seizure occurred under the totality of the circumstances when the officers did not activate emergency lights, block in Wittenberg's vehicle, display weapons, or engage in other threatening behavior before discovering his intoxication. Alternatively, the State argued the community caretaking exception justified the officers' actions. The State argued Wittenberg's admissions preceded any custodial interrogation or were made spontaneously after he asked for a lawyer. The district court conducted an evidentiary hearing; Officer Shelburg testified, and the dashcam and bodycam videos were admitted into evidence.

The district court granted the suppression motion in part, excluding evidence of several statements Wittenberg made.[1] But the court ruled Wittenberg had not been "seized" before the police discovered his intoxication. The court noted the officers did not pull him over, use a siren or emergency lights, or block

---

[1]The *Miranda* ruling is not at issue in this appeal, and we do not address it.

his exit, noting the video showed Wittenberg "had the ability to reverse his car and leave the parking lot." The court found the use of flashlights "was reasonable due to officer safety." The case proceeded to a jury trial, and Wittenberg was convicted of operating a motor vehicle while intoxicated, third offense.

Wittenberg appealed, reiterating his arguments that the officers' actions constituted a seizure and that the community caretaking exception was inapplicable. The State argued the district court correctly determined that Wittenberg was not seized and argued in the alternative that the community caretaking doctrine applied to justify the officers' actions.

We transferred the case to the court of appeals, which affirmed the district court's suppression ruling. The court of appeals rejected Wittenberg's argument that "a reasonable person would not feel free to leave when officers park their car behind them, shine a spotlight on their car, and approach them on foot with flashlights directed into the car." The court concluded the officers' actions were not "sufficiently coercive to amount to a seizure." The appellate panel noted Wittenberg was not wholly blocked in and had room to drive away. The court cited *State v. Cyrus*, No. 21–0828, 2023 WL 152521, at *4 (Iowa Ct. App. Jan. 11, 2023), for the proposition that "the use of a spotlight is closer to the use of ordinary headlights at night as opposed to the activation of emergency lights." Finally, the appellate court found that the brief moment when Officer Frederick walked behind Wittenberg's car was not coercive "but was instead an activity any private person could engage in and so does not amount to a seizure."[2]

We granted Wittenberg's application for further review.

---

[2]The court of appeals did not reach the community caretaking issue, nor do we.

## II. Standard of Review.

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "Each case must be evaluated in light of its unique circumstances." *Id.* (quoting *Coffman*, 914 N.W.2d at 244). "We examine the whole record and make an independent evaluation of the totality of the circumstances." *Id.* (quoting *Coffman*, 914 N.W.2d at 244). "[W]e give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *State v. Torres*, 989 N.W.2d 121, 126 (Iowa 2023) (alteration in original) (quoting *State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022)). The defendant has the burden to prove whether a seizure occurred. *Fogg*, 936 N.W.2d at 668.

## III. Analysis.

On further review, Wittenberg reargues the facts and contends the court of appeals erred in its "minimization of the blinding effect of the spotlight, and dismissal of the officer's presence immediately behind his car even though it rendered [his] movement impossible." We agree with the district court and court of appeals that the officers' actions were insufficiently coercive to constitute a seizure under the Fourth Amendment to the U.S. Constitution or article I, section 8 of the Iowa Constitution. We begin with an overview of seizure law.

The Fourth Amendment to the U.S. Constitution and article I, section 8 of the Iowa Constitution "safeguard '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *State v. Abu Youm*, 988 N.W.2d 713, 718 (Iowa 2023) (alteration in original) (quoting U.S. Const. amend. IV). Wittenberg did not argue for a separate

Iowa constitutional analysis. We therefore apply the general federal framework. *Fogg*, 936 N.W.2d at 667. When determining whether a seizure occurred, we look at the "totality of the circumstances." *United States v. Mendenhall*, 446 U.S. 544, 557 (1980). "The [United States] Supreme Court . . . emphasized almost forty years ago that not all personal intercourse between the police and citizens involve seizures." *State v. Wilkes*, 756 N.W.2d 838, 843 (Iowa 2008). "[I]noffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* (quoting *Mendenhall*, 446 U.S. at 555). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Or put another way, a seizure occurs when "the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse." 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 597 (6th ed. 2020) [hereinafter LaFave].

We have noted that "objective indices of police coercion must be present to convert an encounter between police and citizens into a seizure." *Wilkes*, 756 N.W.2d at 843. The U.S. Supreme Court, in *United States v. Mendenhall*, listed various factors that would convey to a reasonable person they were not free to leave:

> the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

446 U.S. at 554. In *Michigan v. Chesternut*, the Supreme Court discussed other factors that may constitute a seizure, such as whether "the police activated a siren or flashers," or whether the officer operated their patrol car "in an aggressive manner to block respondent's course or otherwise control the

direction or speed of his movement." 486 U.S. 567, 575 (1988). Other courts have noted factors that may constitute a seizure: "boxing the car in, approaching [the car] on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or use of flashing lights as a show of authority." LaFave at 612–13 (footnotes omitted).

Notably absent here are any of those paradigmatic factors establishing a seizure. Officers did not pull over Wittenberg's car; he was already parked. Officers did not activate their siren or emergency lights. Officers did not block in his car, but rather left room for him to back out and drive away. No one brandished a weapon. Two officers are not "many." The initial verbal contact was conversational, without any command or order before his intoxication was noticed. Our fact-specific inquiry turns next to the use of the spotlight.

Our opinion today in *Cyrus* thoroughly analyzed caselaw addressing police use of spotlights and declined to adopt a per se rule that their use constitutes a seizure; rather, spotlight use is only a factor to consider in the totality of circumstances. *Cyrus*, ___ N.W.2d at ___–___. Applying *Cyrus* to the facts of this case, without repeating its analysis here, we determine Officer Shelburg's use of the spotlight did not escalate this nighttime encounter with Wittenberg into a seizure. *See id.*

Next, we address Wittenberg's claim that he was effectively boxed in because the patrol car blocked the exit, and he could not drive forward due to the curb. His only way out was on foot or to back up and drive out the parking lot's entrance. In our independent review, Wittenberg had room to back up, swing around, and leave the parking lot. He was not boxed in. *See Fogg*, 936 N.W.2d at 670 (determining that the driver was not seized because "[s]he was not 'boxed in'" and "she could have driven backward either with or without turning

around"). We agree with the court of appeals and district court that the position of the patrol car did not effectuate a seizure.

We also give little weight to the fact Officer Frederick momentarily blocked Wittenberg from backing up when she walked behind the Chrysler to get to its passenger side. Officers and private citizens alike may walk behind parked vehicles. The officer did not linger behind his car, and she did not seize him by briefly walking behind it.

Finally, Wittenberg argues he was seized when the two officers shined flashlights into his car from each side. We have held that an officer did not seize a driver by shining a flashlight into the car. *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981) (noting that the "officer, like any other citizen, had a right to look into the car," and concluding this was "an innocuous police–citizen encounter that did not implicate the fourth amendment"). That *two* officers shined flashlights at Wittenberg, in our view, was not enough to escalate this interaction into a seizure.

In *State v. Wilkes*, we found no seizure under similar circumstances. *See* 756 N.W.2d at 844. There, two officers were patrolling at night when they noticed a truck parked in a quarry. *Id.* at 840. The officers pulled into the quarry, parked about ten or fifteen feet from the truck, and did not activate any emergency lights. *Id.* The officers exited the patrol car and approached the truck on foot— one officer to the driver's side, the other officer to the passenger's side. *Id.* at 841. One officer asked the driver if everything was okay and asked what was going on. *Id.* During this exchange, the officer smelled alcohol coming from the truck. *Id.* We found this case similar to *State v. Harlan*, 301 N.W.2d 717, and concluded that no seizure occurred because the driver's ability to drive away was not substantially impaired and that the presence of two officers was not sufficiently

coercive without any physical force or other show of authority. *Id.* at 844–45. We reach the same conclusion here.

We hold that the officers did not seize Wittenberg before his intoxication was observed, and he was lawfully detained for that reason.

**IV. Disposition.**

For these reasons, we affirm the decision of the court of appeals and the district court's suppression ruling.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except May, J., who takes no part.